**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **FURNITURE BRANDS INTERNATIONAL, INC., *et al.*,**[1] | ) | **Case No. 13-12329 (CSS)** |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | **RE: Docket No. 85** |

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328 AND BANKRUPTCY RULE 2014(a) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISOR, *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application") of Furniture Brands International, Inc. ("FBN") and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), for an order pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to retain and employ Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively,

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: Furniture Brands International, Inc. (7683); Action Transport, Inc. (7587); Broyhill Furniture Industries, Inc. (3217); Broyhill Home Furnishings, Inc. (8844); Broyhill Retail, Inc. (8843); Broyhill Transport, Inc. (1721); Furniture Brands Holdings, Inc. (2837); Furniture Brands Operations, Inc. (4908); Furniture Brands Resource Company, Inc. (1288); HDM Furniture Industries, Inc. (7484); HDM Retail, Inc. (6125); HDM Transport, Inc. (4378); Lane Furniture Industries, Inc. (5064); Lane Home Furnishings Retail, Inc. (9085); Laneventure, Inc. (8434); Maitland-Smith Furniture Industries, Inc. (7486); Thomasville Furniture Industries, Inc. (6574); Thomasville Home Furnishings, Inc. (3139); Thomasville Retail, Inc. (f/k/a Classic Design Furnishings, Inc.) (6174). The debtors' corporate headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

"A&M")[2] as restructuring advisor, *nunc pro tunc* to the date of filing of these cases (the "Petition Date") on the terms set forth in the engagement letter (the "Engagement Letter") annexed to the Application as **Exhibit B-1**; and upon the Declaration of Shawn Hassel in support of the Application annexed thereto as **Exhibit C**; and due and adequate notice of the Application having been given; and the Court being satisfied that A&M is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted to the extent set forth herein.

2. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

3. Pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Debtors are hereby authorized to retain A&M as restructuring advisor to the Debtors, *nunc pro tunc* to the Petition Date on the terms set forth in the Engagement Letter.

4. The terms of the Engagement Letter, including without limitation, the compensation provisions, the indemnification provisions, all as modified by the Application and this Order, are reasonable terms and conditions of employment and are hereby approved.

5. The indemnification provisions of the Engagement Letter are approved, subject

---

[2] In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any A&M professional or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates.

during the pendency of these chapter 11 cases to the following:

a. A&M shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court;

b. The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution, or reimbursement under the terms of the Agreement as modified by this Order; and

c. If before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, A&M must file an application seeking such relief in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement and the circumstances under which such request shall be considered under the jurisdiction of this Court, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M. All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution, or reimbursement.

6. A&M shall apply for compensation and reimbursement in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware as may then be applicable, and such procedures as may be fixed by order of this Court.

7. To the extent that A&M enters into any incentive compensation arrangement with the Debtors, it will promptly file an amended retention application seeking approval of such arrangement.

8. To the extent A&M has any prepetition claims against any of the Debtors, such claims are hereby waived and released.

9. Notwithstanding anything in the Engagement Letter to the contrary, A&M will serve as Financial Advisor to the Debtors, working under the direction of the Debtors' Board of Directors, and will assist the Board of Directors, the Debtors' management, other professionals engaged by the Debtors, and the Debtors' postpetition debtor-in-possession secured financing lender (the "DIP Lender"), including with respect to the following:

a. Monitor and assist management in all daily and weekly cash management functions of the Debtors, including disbursements and cash collections. To the extent there is a material disagreement between Management and A&M, A&M will bring the matter to the attention of the Board of Directors;

b. Monitor and assist management in its assessment of (i) any material capital commitments, (ii) any payments to existing creditors outside the ordinary course of business, and (iii) any new contracts or the modification of existing contracts, including extensions of trade credit to suppliers or adjustments to customer receivables. To the extent there is a material disagreement between Management and A&M, A&M will bring the matter to the attention of the Board of Directors;

c. Assist the Debtors in the preparation of cash requirements, cash forecasts, financial projections, and provide such information to the Board of Directors and the DIP Lender on a timely basis;

d. Make recommendations concerning various alternatives to eliminate costs in order to maximize short-term and long-term cash flow and to assist the Debtors in executing cost-reduction measures approved by the Board of Directors and the DIP Lender, with DIP Lender approval only

required to the extent such measures are not already contemplated in the DIP Budget;

e. Formulate immediate cash conservation strategies, with such plans to be discussed with and approved by the Board of Directors and the DIP Lender, with DIP Lender approval only required to the extent such measures are not already contemplated in the DIP Budget;

f. Provide advice on the formulation and, if requested, assist the Debtors with the execution of the overall strategy and alternatives for the various potential sale opportunities the Debtors are currently contemplating or may contemplate in the future;

g. Assist in negotiations with various parties in interest as required to accomplish the aforementioned goals of the Debtors;

h. Consult with the DIP Lender on any material strategic matters that pertain to the future performance of the Debtors;

i. Provide other reports or analyses on a timely basis as may be reasonably requested by the DIP Lender; and

j. Assist with any other matters as may be requested by the aforementioned parties that fall within A&M's areas of expertise.

10. To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Date: October 2, 2013
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE