# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
FURNITURE BRANDS                          :   Case No. 13-12329 (CSS)
INTERNATIONAL, INC., et al.,              :
                                          :
         Debtors.¹                        :   Jointly Administered
                                          :
                                          :   Re:  Docket Nos. 26, 313
                                          :
--------------------------------------------------------------x
```

**ORDER (I) APPROVING SALE OF ALL ACQUIRED ASSETS; (II) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 26] (the "Motion")² of the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors") pursuant to sections 105(a), 363, and

365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

1   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
    number, as applicable, are:  Furniture Brands International, Inc. (7683); Action Transport, Inc. (7587);
    Broyhill Furniture Industries, Inc. (3217); Broyhill Home Furnishings, Inc. (8844); Broyhill Retail, Inc.
    (8843); Broyhill Transport, Inc. (1721); Furniture Brands Holdings, Inc. (2837); Furniture Brands
    Operations, Inc. (4908); Furniture Brands Resource Company, Inc. (1288); HDM Furniture Industries, Inc.
    (7484); HDM Retail, Inc. (6125); HDM Transport, Inc. (4378); Lane Furniture Industries, Inc. (5064);
    Lane Home Furnishings Retail, Inc. (9085); Laneventure, Inc. (8434); Maitland-Smith Furniture Industries,
    Inc. (7486); Thomasville Furniture Industries, Inc. (6574); Thomasville Home Furnishings, Inc. (3139);
    Thomasville Retail, Inc. (f/k/a Classic Design Furnishings, Inc.) (6174).  The Debtors' corporate
    headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

2   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in that
    certain Asset Purchase Agreement by and among (i) Furniture Brands International, Inc. and certain of its
    subsidiaries, (ii) the Purchasers (as defined therein), and (iii) the guarantors set forth therein, dated as of
    October 2, 2013, a copy of which is attached hereto as **Exhibit 1**, and the exhibits and schedules thereto (each
    as may be amended or supplemented from time to time, including Amendment No. 1 to Asset Purchase
    Agreement, dated November 5, 2013, collectively, the "Asset Purchase Agreement").

District of Delaware (the "Local Rules"), for entry of an order (this "Order") (i) approving the sale of all of the Acquired Assets; (ii) authorizing the assumption and assignment of executory contracts and unexpired leases; and (iii) granting related relief, all as more fully described in the Motion; and the Court having entered the *Order (i) Approving (a) Bidding Procedures; (b) Form and Manner of Notices; (c) Form of Asset Purchase Agreement, Including Bid Protections; (ii) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sales, Including Treatment of Executory Contracts and Unexpired Leases; and (iii) Granting Related Relief* [Docket No. 313] (the "Original Bidding Procedures Order") and the *Order Approving Technical Modifications to Bidding Procedures Order* [Docket No. 589] (the "Modification Order" and, together with the Original Bidding Procedures Order, the "Bidding Procedures Order"); and the Debtors having determined that the highest or otherwise best offer for the Acquired Assets was made by the Purchasers (as part of the Sale (as defined herein) contemplated by the Asset Purchase Agreement) in the form of the Asset Purchase Agreement; and the Court having conducted a hearing on November [22], 2013 (the "Sale Hearing") to consider the approval of the Sale of the Acquired Assets and consummation of the Sale pursuant to the terms and condition of the Asset Purchase Agreement, and the Court having considered: (i) the Motion and any objections thereto; (ii) the proposed Sale of the Acquired Assets by the Debtors to the Purchasers pursuant to the Asset Purchase Agreement and the Transaction (as defined herein) contemplated thereby; (iii) the arguments of counsel made, and evidence adduced, related thereto; and (iv) the full record in the Chapter 11 Cases, including the record related to the hearing to consider the Original Bidding Procedures Order and the Sale Hearing held before the Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement, the Sale of the Acquired Assets, and the Transaction contemplated by

the Asset Purchase Agreement; and it appearing that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties in interest and that

reasonable and adequate notice of the Motion, the Bidding Procedures Order, the Sale

contemplated by the Asset Purchase Agreement, this Order, and the Sale Hearing has been

provided to all entities required to be served in accordance with the Bankruptcy Code and the

Bankruptcy Rules; and after due deliberation thereon; and good and sufficient cause appearing

therefor, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:**[3]

      A.      The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.

      B.      To the extent that any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

      C.      The Court has jurisdiction over the Motion and over the property of the

Debtors, including the Acquired Assets to be sold, transferred, and conveyed pursuant to the

Asset Purchase Agreement, and the Sale contemplated by the Asset Purchase Agreement

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and the

---

[3]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the
Motion are hereby incorporated herein to the extent not inconsistent herewith.

Motion in this District and Court (as defined herein) is proper under 28 U.S.C. §§ 1408 and

1409.

D.     This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just

reason for delay in the implementation of this Order and expressly directs entry of judgment as

set forth herein.

E.     The Acquired Assets constitute property of the Debtors' estates and title

thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy

Code.

F.     The statutory bases for the relief requested in the Motion are

sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and

9014, and Local Rule 6004-1.

G.     On September 9, 2013 (the "Petition Date"), each of the Debtors filed

voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court" or the "Court").  Since the Petition

Date, the Debtors have continued to operate their businesses and manage their properties as

debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

H.     On September 18, 2013, the official committee of unsecured creditors was

appointed (the "Committee").

I.     The Court entered the Original Bidding Procedures Order on October 3,

2013 (i) establishing bidding and auction procedures (the "Bidding Procedures"), (ii) approving

the proposed Bid Protections (as defined in the Motion) for the Purchasers in accordance with the Asset Purchase Agreement, (iii) scheduling an Auction and the Sale Hearing to consider the Sale, (iv) permitting credit bidding for the Purchasers pursuant to section 363(k) of the Bankruptcy Code, (v) establishing procedures for noticing and determining cure amounts related to the Debtors' executory contracts and unexpired leases, (vi) approving the form and manner of notice of all procedures, protections, schedules, and agreements, and (vii) granting certain related relief.  The Court entered the Modification Order on November 6, 2013, approving certain technical modifications to the Original Bidding Procedures Order, including with respect to the marketing and sale timeline.

        J.      Actual written notice of, and a reasonable opportunity to object or be heard with respect to, the Motion, the Auction, the Sale Hearing, and the Sale has been afforded to all known interested entities, including, without limitation, the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) the creditors on the Debtors' creditor matrix as of October 10, 2013; (iii) counsel to the Committee; (iv) counsel to the Purchasers; (v) GE Capital; (vi) counsel for NexBank SSB, as administrative agent for the Debtors' prepetition term lenders; (vii) counsel for GE Capital, as administrative agent for the Debtors' prepetition asset-based credit facility lenders; (viii) counsel for Bank of America N.A., as administrative agent for the Debtors' postpetition lenders; (ix) the United States Attorney for the District of Delaware; (x) the Internal Revenue Service; (xi) the Securities and Exchange Commission; (xii) those entities who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (xiii) all entities that have expressed an interest to the Debtors' investment bankers in purchasing the Acquired Assets.

K.    The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the sale process, including approval and authorization to serve the Sale Notice (as defined in the Original Bidding Procedures Order) and the Revised Sale Notice (as defined in the Modification Order).

L.    The Sale Notice and the Revised Sale Notice provided all interested parties with timely and proper notice of the Sale contemplated by the Asset Purchase Agreement, the Sale Hearing, and the Auction, including the assumption, sale, and assignment of each Assumed Executory Contract.

M.    As evidenced by the certificates and affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.[4]  The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, and the Sale required by the Bidding Procedures Order, including with respect to notice of the assumption, sale, and assignment of each Assumed Executory Contract.[5]  Notice of the Motion, the Auction, the Sale Hearing, and the Sale was also published in *The Wall Street Journal*, national edition, on October 14, 2013 and on November [__], 2013, the *St. Louis Post-Dispatch* on October 14, 2013 and on November [__], 2013, and the November issue of the *Home Furnishings News*, which was distributed on or around November 1, 2013.[6]  The notices

---

[4]    *See Affidavit of Service*, dated October 17, 2013 [Docket No. 417]; *Affidavit of Service*, dated _____, 2013 [Docket No. ____].

[5]    *See Affidavit of Service*, dated October 21, 2013 [Docket No. 467]; *Affidavit of Service*, dated October 23, 2013 [Docket No. 528].

[6]    *See Affidavit of Publication of Notice of Bid Deadline, Public Auction, and Sale Hearing in Connection with the Sale of All or Substantially All of the Acquired Assets in* St. Louis Post-Dispatch *on October 14, 2013, dated*

(Continued…)

described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, or the Sale contemplated by the Asset Purchase Agreement is required.

N.      The disclosures made by the Debtors concerning the Asset Purchase Agreement, the Auction, the Sale contemplated by the Asset Purchase Agreement, and the Sale Hearing were good, complete, and adequate.

O.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive and proposed and executed in good faith as a result of arm's-length negotiations between the Debtors and the Purchasers, and were substantively and procedurally fair to all entities.

P.      The Debtors conducted the sale and auction process in accordance, and have otherwise complied in all respects, with the Bidding Procedures Order.  The sale and auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets.

Q.      The Asset Purchase Agreement contemplates a transaction pursuant to which the Purchasers will acquire the Acquired Assets and assume the Assumed Obligations, subject to the Permitted Liens (the "Transaction").  The sale of the Acquired Assets, and any related transactions, including, without limitation, the assumption and assignment of the Assumed Executory Contracts, shall be referred to herein collectively as the "Sale."

---

October 31, 2013 [Docket No. 546]; *Affidavit of Publication of Notice of Bid Deadline, Public Auction, and Sale Hearing in Connection with the Sale of All or Substantially All of the Acquired Assets in* The Wall Street Journal *on October 14, 2013*, dated October 31, 2013 [Docket No. 547]; *Affidavit of Publication*, dated October 31, 2013 [Docket No. 552]; [_____].

R.       The Asset Purchase Agreement and the Sale contemplated thereby constitute the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

S.       The Asset Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Cases.  No other entity or group of entities has offered to purchase the Acquired Assets with a higher or otherwise better offer than the Purchasers.

T.       Approval of the Motion and the Asset Purchase Agreement and the consummation of the Sale contemplated thereby are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

U.       The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Acquired Assets outside the ordinary course of business.  Such business reasons include the following: (i) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going concern basis and avoid decline and devaluation of the Acquired Assets; and (iii) any other transaction, including pursuant to a chapter 11 plan, would not have yielded as favorable an economic result.

V.       The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code because the Debtors do not qualify as debtors that, in

connection with offering a product or service, disclose to an individual a policy prohibiting the transfer of personally identifiable information about individuals that are not affiliated with the Debtors. Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

W.    The Purchasers are purchasing the Acquired Assets in good faith, are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code, are therefore entitled to the full protections of that provision, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*:  (i) the Purchasers recognized that the Debtors were free to deal with any other entity interested in acquiring the Acquired Assets; (ii) the Purchasers complied with the provisions in the Bidding Procedures Order; (iii) the Purchasers agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Sale have been disclosed; (v) the Purchasers have not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Asset Purchase Agreement and the Sale contemplated thereby was at arm's-length and in good faith.

X.    The Debtors and the Purchasers have not engaged in any conduct that would permit the Asset Purchase Agreement or the sale of the Acquired Assets or the Sale contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

Y.    The consideration provided by Purchasers pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

Z.      By consummating the Sale pursuant to the Asset Purchase Agreement and the Sale contemplated thereby, the Purchasers are not a mere continuation of the Debtors or their estates and there is no continuity between the Purchasers and Debtors.  The Purchasers are not holding themselves out to the public as a continuation of the Debtors.  The Purchasers are not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchasers and the Debtors.

AA.      The Sale of the Acquired Assets outside a chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors.  The Sale does not constitute a *sub rosa* plan.

BB.      Subject to the entry of this Order, the Debtors, acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the Sale contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

CC.      The Purchasers have not agreed to assume and shall have no obligations with respect to any liabilities of the Debtors or their subsidiaries or Affiliates other than the Assumed Obligations and the Permitted Liens expressly set forth in the Asset Purchase Agreement.

DD.      The transfer of each of the Acquired Assets to the Purchasers will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchasers with all right, title, and interest of the Debtors to the Acquired Assets free and clear

10

of all Interests or Claims (as defined in paragraph 9 hereof) accruing, arising, or relating thereto any time prior to the Closing Date, except for any Assumed Obligations and Permitted Liens under the Asset Purchase Agreement.

   EE. The Debtors may sell the Acquired Assets free and clear of all Interests or Claims against the Debtors, their estates, or any of the Acquired Assets (except for the Assumed Obligations and the Permitted Liens) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests or Claims against the Debtors, their estates, or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests or Claims, if any, in each instance against the Debtors, their estates, or any of the Acquired Assets, attach to the cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

   FF. If the Sale were not free and clear of all Interests or Claims, or if the Purchasers would, or in the future could, be liable for any of the Interests or Claims, the Purchasers would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors, their estates and their creditors.

   GG. The assumption and assignment of the Assumed Executory Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best

interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  For the avoidance of doubt, Assumed Executory Contracts include, without limitation, any Designated Contracts that become Assumed Executory Contracts in accordance with the terms of the Asset Purchase Agreement.

HH.    The Debtors and Purchasers have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in connection with the Sale and the assumption and assignment of the Assumed Executory Contracts to the extent provided under the Asset Purchase Agreement.  The Purchasers are able to demonstrate adequate assurance of future performance with respect to any Assumed Executory Contracts in accordance with section 365(b)(1)(C) of the Bankruptcy Code.  Except as expressly provided by the Asset Purchase Agreement, the Assumed Executory Contracts are assumable and assignable notwithstanding any provisions contained therein to the contrary.

II.    To maximize the value of the Acquired Assets, it is essential that the closing of the Sale occurs within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

JJ.    Subject to the terms and conditions of the DIP Order: (i) the DIP Lenders (excluding any DIP Lender that is not an Affiliate of the Purchasers) hold allowed secured claims entitled to superpriority status in the aggregate amount of not less than $[_____], which claims are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts, including accrued interest with respect thereto and any fees, expenses, costs, or

charges, all to the extent allowed under, and pursuant to, the DIP Credit Agreement and the DIP

Order (the "<u>DIP Claims</u>"); (ii) on account of the DIP Claims, the DIP Lenders (excluding any

DIP Lender that is not an Affiliate of the Purchasers) are secured creditors of the Debtors,

holding valid, binding, enforceable, and perfected security interests in, on, and against the

Debtors, their estates, and property of the estates, arising in connection with, and pursuant to

(a) the DIP Credit Agreement and (b) the DIP Order; and (iii) pursuant to the Bidding Procedures

Order, the Purchasers were authorized to credit bid any or all such DIP Claims at the Auction

under section 363(k) of the Bankruptcy Code.

       KK.    Subject to the terms and conditions of the DIP Order, pursuant to the

agreements under the Asset Purchase Agreement and sections 363(b) and 363(k) of the

Bankruptcy Code, the Purchasers credit bid $[_____] of the DIP Claims, which credit bid

was a valid and proper offer pursuant to the Bidding Procedures Order (the "<u>Credit Bid</u>").

       LL.    Given all of the circumstances of the Chapter 11 Cases and the adequacy

and fair value of the Purchase Price under the Asset Purchase Agreement, the Sale constitutes a

reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest, and should be approved.

       MM.   The consummation of the Sale is legal, valid, and properly authorized

under all applicable provisions of the Bankruptcy Code, including, without limitation,

sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of

the applicable requirements of such sections have been complied with in respect of the Sale.

## NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

       1.    The relief requested in the Motion is granted and approved as set forth in

this Order, and the Sale contemplated thereby and by the Asset Purchase Agreement is approved

as set forth in this Order.

2.       Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.       Notice of the Motion, the Auction, the Sale Hearing, and the Sale contemplated by the Asset Purchase Agreement was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

**Approval of the Sale of the Acquired Assets**

4.       The Purchasers' offer for the Acquired Assets, as embodied in the Asset Purchase Agreement, is the highest or otherwise best offer for the Acquired Assets.  The Asset Purchase Agreement, including all other ancillary documents, and all of the terms and conditions thereof, and the Sale contemplated thereby, including the Credit Bid and the Transaction, are hereby approved in all respects.

5.       The Sale of the Acquired Assets and the consideration provided by the Purchasers under the Asset Purchase Agreement, including the amount provided pursuant to the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable law.

6.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale, including the Transaction, pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale as contemplated in the Asset Purchase Agreement and this Order,

(c) transfer and assign all right, title, and interest (including common law rights) to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement, and (d) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such ancillary documents.

7.      This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests or Claims (whether known or unknown) against any Debtor, any holders of Interests or Claims against or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchasers and all successors and assigns of the Purchasers, and any trustees, examiners, or other fiduciaries under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases.

8.      The terms and provisions of the Asset Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates, and their creditors, the Purchasers and their respective Affiliates, successors, and assigns, and any affected third parties, including all entities asserting any Interests or Claims in the Acquired Assets to be sold to the Purchasers pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to

which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

**Sale and Transfer of Acquired Assets**

9.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to the Asset Purchase Agreement, the Acquired Assets shall be transferred to the Purchasers free and clear of all interests, including, without limitation, Excluded Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, liens (including as that term is defined in the Asset Purchase Agreement and including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens, and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including, without limitation, any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities, of the Debtors or any of the Debtors' predecessors or Affiliates, claims (as that term is defined in the Bankruptcy Code), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent

or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,

disputed or undisputed, whether arising prior to or subsequent to the commencement of these

bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise,

including claims otherwise arising under doctrines of successor liability other than the Assumed

Obligations and Permitted Liens (collectively, the "Interests or Claims"), with all such Interests

or Claims to attach after the Closing Date to the cash proceeds of the Sale in the order of their

priority, with the same validity, force, and effect which they now have as against the Acquired

Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  For the

avoidance of doubt, the Acquired Assets include, without limitation, all outstanding equity

interests of any Foreign Subsidiary the equity interests of which are held directly by a Seller and

which is set forth on Schedule 2.1(a)(xviii) of the Asset Purchase Agreement.

        10.     On the Closing Date, this Order shall be construed and shall constitute for

any and all purposes a full and complete general assignment, conveyance, and transfer of all of

the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired

Assets to the Purchasers.  On the Closing Date, this Order shall be construed and shall constitute

for any and all purposes a full and complete and general assignment of all right, title, and interest

of the Debtors and each estate to the Purchasers in the Assumed Executory Contracts.  For the

avoidance of doubt, the Excluded Assets are not included in the Acquired Assets.

        11.     Subject to the entry of this Order and terms and conditions of this Order,

the transfer of Acquired Assets to the Purchasers pursuant to the Asset Purchase Agreement does

not require any consents other than as specifically provided for in the Asset Purchase Agreement

and constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the

Purchasers with all of the right, title, and interest of the Debtors in and to the Acquired Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever.

12.     To the greatest extent available under applicable law and except as provided in the Asset Purchase Agreement, the Purchasers, as provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchasers as of the Closing Date as provided by the Asset Purchase Agreement.

13.     All entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchasers on the Closing Date.

14.     Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all entities holding Interests or Claims in all or any portion of the Acquired Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' Business prior to the Closing Date, or the transfer of the Acquired Assets to the Purchasers, hereby are forever permanently barred, estopped, and enjoined from asserting against the Purchasers or their successors or assigns, their property, or the Acquired Assets, such entities' Interests or Claims in and to the Acquired Assets.  On the Closing Date, each creditor of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release Interests or

Claims on the Acquired Assets, if any, as provided for herein, as such Interests or Claims may have been recorded or may otherwise exist.  The Sale, including the Transaction, authorized herein shall be of full force and effect, regardless of the Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

15.     Effective upon the Closing Date and without further order of the Court, if any person or entity that has filed financing statement, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Purchasers are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Acquired Assets of any kind or nature.  For the avoidance of doubt, to the extent necessary, upon consummation of the Sale, the Purchasers are authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

16.     All entities are hereby forever prohibited and permanently barred, estopped, and enjoined from taking any action that would adversely affect or interfere with the

ability of the Debtors to sell and transfer the Acquired Assets to the Purchasers in accordance with the terms of the Asset Purchase Agreement and this Order.

17.     This Order is and shall be binding upon and govern the acts of all entities, including federal, state, and governmental agencies or departments, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale.

18.     Subject to the terms and conditions of the DIP Order: (a) upon the Closing, the DIP Claims shall be deemed satisfied in an amount equal to the Credit Bid; (b) after deducting the amount of the Credit Bid, the DIP Claims shall be deemed to be allowed claims in each of the Chapter 11 Cases without further order of the Court; and (c) upon Closing, the liens on the assets of the Debtors granted under the DIP Credit Agreement to secure the indebtedness thereunder shall be deemed released solely with respect to the Acquired Assets, and the Debtors are authorized to and shall take all reasonable actions to confirm removal of any such liens; provided, however, that to the extent the claims under the DIP Credit Agreement have been satisfied in full, all such liens on all assets of the Debtors shall be deemed released without further order of the Court, and the DIP Lenders shall take all reasonable actions to confirm removal of any such liens.

19.     Subject to the terms and conditions of the DIP Order, effective upon the Closing Date and without further order of the Court, (a) the Debtors and their subsidiaries, Affiliates, successors, and assigns and (b) the Committee shall waive any and all actions related to and release each of the DIP Lenders and each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, Affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their respective capacity as such (collectively, the "DIP Parties") from any and all damages, losses, settlement payments, obligations, liabilities, claims, actions, causes of action, whether groundless or otherwise, arising out of, based upon, or related to, in whole or in part, any of the DIP Credit Agreement or the DIP Order, any documents related to the DIP Credit Agreement or the DIP Order, any aspect of the prepetition or postpetition relationship with the DIP Parties and any Debtor, or any other acts or omissions by the DIP Parties in connection with the DIP Credit Agreement or the DIP Order, any documents related to the DIP Credit Agreement or the DIP Order, or any aspect of their prepetition or postpetition relationship with any Debtor.

20.     Except as set forth in the Asset Purchase Agreement or this Order, Purchasers are purchasing the Acquired Assets on an "as is, where is" basis.

**Contracts to Be Assigned**

21.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and assignment to the Purchasers of the Assumed Executory Contracts, and the Purchasers' assumption thereof on the terms set forth in the Asset Purchase Agreement, each is hereby

approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

22.     The Debtors are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Purchasers, effective upon the Closing Date or, with respect to Designated Contracts that become Assumed Executory Contracts pursuant to the terms of the Asset Purchase Agreement, effective upon delivery of the corresponding Assumption Notice by the Purchasers to the Debtors, the Assumed Executory Contracts free and clear of all Interests or Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other instruments as may be reasonably necessary to assign and transfer the Assumed Executory Contracts to the Purchasers.

23.     Upon the Closing or, with respect to Designated Contracts that become Assumed Executory Contracts pursuant to the terms of the Asset Purchase Agreement, upon delivery of the corresponding Assumption Notice by the Purchasers to the Debtors, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchasers shall be fully and irrevocably vested in all right, title, and interest of each Assumed Executory Contract.  The Debtors are authorized to and shall cooperate with, and take all actions reasonably requested by, the Purchasers to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

24.     The Assumed Executory Contracts shall be transferred to, and shall remain in full force and effect for the benefit of, the Purchasers in accordance with their respective terms, notwithstanding any provision in any such Assumed Executory Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

25.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided by this Order, the Debtors are authorized to and shall promptly pay the Cure Amounts (other than Cure Amounts, capped at $2,100,000, for Assumed Contracts relating to the Lane Business, which is an Assumed Obligation under the Asset Purchase Agreement) relating to any Assumed Executory Contract, if any, as set forth in the Cure Notices[7] (as defined in the Bidding Procedures Order) served by the Debtors on each of the parties to Scheduled Contracts, with respect to possible assumption and assignment thereof.  The Cure Amounts are hereby fixed at the amounts set forth in the Cure Notices served by the Debtors, or the amounts determined on the record at the Sale Hearing or as set forth in this Order, as the case may be, and the non-Debtor parties to the Assumed Executory Contracts are forever bound by such Cure Amounts as full, final, and complete satisfaction of all amounts due to cure defaults and compensate for any actual pecuniary loss, and such non-Debtor parties are hereby forever permanently barred, estopped, and enjoined from taking any action against the Debtors or their estates, the Purchasers, or the Acquired Assets with respect to any claim for cure under any Assumed Executory Contract.  The payment of the applicable Cure Amounts (if any) by the Debtors (or the Purchasers, with respect to the Cure Amounts, capped at $2,100,000, for Assumed Contracts relating to the Lane Business) will (a) effect a cure of all defaults existing thereunder as of the date that such executory contracts or unexpired leases are assumed and assigned within the meaning of section 365(b)(1)(A) of the Bankruptcy Code or otherwise and

---

[7]     Specifically, the Cure Notices are: (a) the *Notice to Counterparties to Executory Contracts and Unexpired Leases the Debtors May Assume and Assign as Part of Sale of All or Substantially All of the Acquired Assets*, dated October 18, 2013 [Docket No. 424]; and (b) the *Notice to Counterparties to Executory Contracts and Unexpired Leases the Debtors May Assume and Assign as Part of Sale of All or Substantially All of the Acquired Assets*, dated November 4, 2013 [Docket No. 573].  *See also Affidavit of Service*, dated October 21, 2013 [Docket No. 467]; *Affidavit of Service*, dated October 23, 2013 [Docket No. 528].

(b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default within the meaning of section 365(b)(1)(B) of the Bankruptcy Code or otherwise, at which time the Purchasers shall then have taken assignment of the Assumed Executory Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Executory Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts by the Debtors (or the Purchasers, with respect to the Cure Amounts, capped at $2,100,000, for Assumed Contracts relating to the Lane Business), neither the Debtors nor the Purchasers shall have any further liabilities to the counterparties to the Assumed Executory Contracts with respect to the cure of defaults, other than the Purchasers' obligations under the Assumed Executory Contracts that accrue and become due and payable on or after the date that such Assumed Executory Contracts are assumed.

26.     Any provisions in any Assumed Executory Contracts that prohibit or condition the assignment of such Assumed Executory Contracts or allow the party to such Assumed Executory Contracts to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Executory Contract constitute unenforceable anti-assignment provisions that are void and of no force or effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchasers of the Assumed Executory Contracts have been satisfied.

27.     Any entity having the right to consent to the assumption or assignment of any Assumed Executory Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

28.     Upon the fulfillment of the conditions set forth in Sections 2.6, 2.7, and 2.8 of the Asset Purchase Agreement, including the Debtors' payment (or the Purchasers' payment, with respect to the Cure Amounts, capped at $2,100,000, for Assumed Contracts relating to the Lane Business) of the relevant Cure Amounts, if any, the Purchasers shall be deemed to be substituted for the Debtors as party to the applicable Assumed Executory Contracts, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Executory Contracts.

29.     The Purchasers are able to provide and have provided adequate assurance of future performance under the relevant Assumed Executory Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

30.     There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to the Purchasers or the Debtors as a result of the assumption and assignment of the Assumed Executory Contracts.

31.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Executory Contracts are forever permanently barred, estopped, and enjoined from raising or asserting against the Debtors or the Purchasers any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Assumed Executory Contracts existing as of the date that such Contracts are assumed or arising by reason of the Closing.

32.     Neither the Purchasers nor any of their successors shall be responsible for any Interests or Claims or have any obligations arising out of any of the contracts, agreements, or

understandings that are Excluded Contracts (except as specifically provided in the Asset

Purchase Agreement).

33.   No later than five (5) Business Days after the assumption and assignment

of an Assumed Executory Contract becomes effective, the Debtors shall file a notice of such

Assumed Executory Contracts with the Court.

**Additional Provisions**

34.   Effective upon the Closing Date and without further order of the Court, all

entities are forever prohibited and permanently enjoined from commencing or continuing in any

manner any action or other proceeding, whether in law or equity, in any judicial, administrative,

arbitral, or other proceeding against the Purchasers, their successors and assigns, or the Acquired

Assets, with respect to any (a) Interests or Claims arising under, out of, in connection with or in

any way relating to the Debtors, the Purchasers, the Acquired Assets, or the operation of the

Business or the Acquired Assets prior to the closing of the Sale, or (b) successor liability,

including, without limitation, the following actions:  (i) commencing or continuing in any

manner any action or other proceeding against the Purchasers, their successors or assigns, assets,

or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment,

award, decree, or order against the Purchasers, their successors or assigns, assets, or properties;

(iii) creating, perfecting, or enforcing any Interests or Claims against the Purchasers, their

successors or assigns, assets, or properties; (iv) asserting any setoff or right of subrogation or

recoupment of any kind against any obligation due the Purchasers or their successors or assigns;

(v) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Order or other orders of the Court or the agreements or

actions contemplated or taken in respect thereof; or (vi) revoking, terminating, or failing or

refusing to issue or renew any license, permit, or authorization to operate any of the Acquired

Assets or conduct any of the businesses operated with the Acquired Assets.

35.     Except for the Assumed Obligations and the Permitted Liens, the

Purchasers shall have no obligation, as successors or otherwise (including with respect to

successor or vicarious liabilities of any kind or character), under any theory of law or equity, to

pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or

payments on account of any under-funding with respect to any and all pension plans), or any

other payment to employees of the Debtors or their Affiliates, and the Purchasers shall have no

liability, as successors or otherwise (including with respect to successor or vicarious liabilities of

any kind or character), under any theory of law or equity, with respect to the following

(collectively, the "Employee Obligations"): (a) any employment or labor agreements (including

any collective bargaining agreements), consulting agreements, severance arrangements, change-

in-control agreements, or other similar agreement to which the Debtors are a party; (b) any

pension, welfare, compensation, or other employee benefit plans, agreements, practices, or

programs, including, without limitation, any pension plan at any time sponsored, maintained,

contributed to, or required to be contributed to by  any of the Debtors or any member of its

controlled group (within the meaning of Sections 414(b), (c), (m) or (o) of the Internal Revenue

Code or Section 4001(b)(1) of Employee Retirement Income Security Act of 1974, as amended

("ERISA"); (c) the cessation of the Debtors' operations, dismissal of employees, or termination

(including rejection) of employment or labor agreements (including any collective bargaining

agreements) or pension, welfare, compensation, or other employee benefit plans, agreements,

practices, programs, or obligations that might otherwise arise from or pursuant to ERISA, the

Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and

Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations

Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, or the Worker Adjustment

and Retraining Notification Act; or (d) workmen's compensation or occupational disease,

unemployment, or temporary disability insurance claims (any agreement, plan, policy, practice,

arrangement, or program described in (a) through (d), collectively the "Employee

Arrangements").  The Purchasers shall in no way, as successor or otherwise (including with

respect to successor or vicarious liabilities of any kind or character), under any theory of law or

equity, be deemed a party to or assignee of any Employee Arrangement, and no employee of the

Purchasers shall be deemed in any way covered by or a party to any Employee Arrangement, and

all parties to any Employee Arrangement are hereby enjoined from asserting against the

Purchasers any and all Interests or Claims arising from or relating to such Employee

Arrangement.  Any and all notices, if any, required to be given to the Debtors' or their Affiliates'

employees pursuant to the Workers Adjustment and Relocation Adjustment Act, or any similar

federal or state law, shall be the sole responsibility and obligation of the Debtors and their

Affiliates, and the Purchasers shall have no responsibility or liability therefor.   Except for the

Assumed Obligations and the Permitted Liens, the Acquired Assets are transferred by the

Debtors to the Purchaser free and clear of all Employee Obligations and all Employee

Arrangements.

　　　　　　　36.　　　Except for the Assumed Obligations and the Permitted Liens and without

limiting paragraphs 9, 34, and 35 of this Order, the Purchasers are not, by virtue of the

consummation of the Sale, assuming, nor shall they be liable or responsible, as successors or

otherwise (including with respect to successor or vicarious liabilities of any kind or character),

under any theory of law or equity, including any theory of antitrust, environmental successor or

28

transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any of their predecessors or Affiliates or the obligations of the Debtors or their predecessors or Affiliates arising prior to the Closing Date, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Acquired Assets or the Debtors' operation of their Business or use of the Acquired Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including any liabilities that result from, relate to, or arise out of tort or other product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchasers a release thereof.  Without limiting the generality of the foregoing and except for the Assumed Obligations and the Permitted Liens, by virtue of the consummation of the Sale, the Purchasers shall not be liable or responsible, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character) under any theory of law or equity, for the Debtors' liabilities, debts, commitments, or obligations, whether calculable by reference to the Debtors, arising on or prior to the Closing and under or in connection with:  (a) any Employee Obligations;

(b) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (c) any bulk sales or similar law; (d) any liabilities, debts, commitments, or obligations of, or required to be paid by, the Debtors for any Taxes of any kind for any period; (e) any liabilities, debts, commitments, or obligations for any Taxes relating to the business of the Debtors or the Acquired Assets for or applicable to the pre-closing period; (f) any litigation; (g) any products liability, other tort, or similar claims, whether pursuant to any state or any federal laws or otherwise including those arising from products or distribution thereof by or on behalf of Debtors; and (h) any Excluded Liabilities.

37.     The Purchasers have given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of any Interests or Claims.  The consideration given by the Purchasers shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchasers, which releases shall be deemed to have been given in favor of the Purchasers by all holders of Interests or Claims against or in the Debtors or any of the Acquired Assets.

38.     The recitation in paragraph 35 of this Order of specific agreements, plans, statutes, or categories thereof is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitments, or obligations referred to therein.

39.     Except as otherwise expressly provided in the Asset Purchase Agreement, no person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Purchasers or

their successors or assigns any claim that they had, have, or may have against the Debtors, or any liability, debt, or obligation relating to or arising from the Acquired Assets, or the Debtors' operation of the Business or use of the Acquired Assets, including any liabilities calculable by reference to the Purchasers or their assets or operations, by virtue of the consummation of the Sale contemplated by the Asset Purchase Agreement, and all persons and entities are hereby enjoined from asserting against the Purchasers in any way any such claims, liabilities, debts, or obligations.

40.     The Debtors, including, without limitation, their respective officers, employees, and agents, are hereby authorized and directed to execute such documents and do such acts as are reasonably necessary or desirable to carry out the Sale contemplated by the terms and conditions of the Asset Purchase Agreement and this Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Order.

41.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Purchasers to give the Debtors any notice provided for in the Asset Purchase Agreement and (b) to allow the Purchasers to take any and all actions permitted by the Asset Purchase Agreement in accordance with the terms and conditions thereof, including effectuating the Sale.

42.     Notwithstanding anything to the contrary in the Asset Purchase Agreement, on or within five business days after the Closing Date, the Debtors are authorized to and shall take all reasonably necessary action to change their names and the names of all their Affiliates to a name that does not include the word "Furniture Brands," "Broyhill," "HDM,"

"Lane," "Maitland-Smith," "Thomasville," or any other name or mark included in the Company

Intellectual Property (including any name set forth on the signature pages to the Asset Purchase

Agreement) or any translations, adaptations, derivations, or combinations of any of the foregoing

or any name or mark confusingly similar thereto (collectively, the "Restricted Names").  The

Debtors shall promptly notify the Purchasers of such name changes and the new names chosen

by each of the Debtors and the Debtors' Affiliates, as applicable, and shall provide the

Purchasers with evidence, reasonably satisfactory to the Purchasers, of such name changes.

From and after Closing, the Debtors and their Affiliates shall cease all use of any Restricted

Name, including by removing all Restricted Names from, or otherwise destroying, all letterhead,

stationary, signage, and tangible assets included in the Excluded Assets.

        43.    The Sale contemplated by the Asset Purchase Agreement is undertaken by

the Purchasers without collusion and in good faith, as that term is defined in section 363(m) of

the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Sale shall not affect the validity of the Sale

(including the Transaction, the assumption by the Debtors and assignment of the Assumed

Executory Contracts to the Purchasers, if any, and the transfer of the Acquired Assets free and

clear of all Interests or Claims), unless such authorization and consummation of such Sale are

duly stayed pending such appeal.  The Purchasers are good faith buyers within the meaning of

section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protections of section

363(m) of the Bankruptcy Code.

        44.    As good faith purchasers of the Acquired Assets, the Purchasers have not

colluded with any of the other bidders, potential bidders, or any other entities interested in the

Acquired Assets and, therefore, neither the Debtors nor any successor in interest to the Debtors'

estates nor any other party in interest shall be entitled to bring an action against the Purchasers or any of their Affiliates, and the Sale of the Acquired Assets may not be avoided, pursuant to section 363(n) of the Bankruptcy Code.

45.    The Carve-Out (as defined in the DIP Order) shall be funded by the DIP Lenders at Closing into a segregated account (the "Carve-Out Account") to be designated by the Debtors for the benefit of the Carve-Out Beneficiaries (as defined herein) in the amount of: (a) all unpaid fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 through the Closing Date; (b) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount of $50,000; and (c) to the extent allowed at any time, all accrued and unpaid reasonable and documented fees, disbursements, costs, and expenses incurred at any time before or on the Closing Date by any professionals or professional firms retained by the Debtors or the Committee whether allowed by the Bankruptcy Court prior to or after the Closing Date, including, without limitation, any fees, disbursements, costs, and expenses to which any such professionals or professional firms may be entitled to on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis as a result of the Closing (each of the entities in (a), (b), or (c) of this paragraph 45, a "Carve-Out Beneficiary" and, collectively, the "Carve-Out Beneficiaries"); provided, that if any amounts included in the Carve-Out Account will not be known as of the Closing Date, any Carve-Out Beneficiary may in good faith estimate the amount to which it believes it may be entitled and such known amounts and good faith estimates shall be the amounts that are funded into the Carve-Out Account. Without in any way limiting the Debtors' ability to use the funds in the Carve-Out Account to satisfy the obligations to the Carve-Out Beneficiaries and subject to the payments to the Carve-

Out Beneficiaries, the funds in the Carve-Out Account shall remain encumbered by and subject

to the liens under the DIP Credit Agreement to the extent the secured claims against the Debtors

under such agreements have not been satisfied in full.

46.    Absent the written consent of the Purchaser, nothing contained in any

chapter 11 plan, or order of any type or kind entered in (a) the Chapter 11 Cases, (b) any

subsequent chapter 7 or chapter 11 case of any of the Debtors, or (c) any related proceeding

subsequent to entry of this Order shall conflict with or derogate from the provisions of the Asset

Purchase Agreement or the terms of this Order.

47.    No bulk sales law or any similar law of any state or other jurisdiction

applies in any way to the Sale.

48.    Other than Miller Buckfire & Co., LLC and Houlihan Lokey Capital, Inc.

and amounts they are due, there are no brokers involved in consummating the Sale and no

brokers' commissions are due.

49.    Nothing in this Order or the Asset Purchase Agreement (including, but not

limited to, Section 2.4(a)(vi) of the Asset Purchase Agreement) (a) releases, nullifies, precludes,

or enjoins the enforcement of any liability (including for penalties, damages, cost recovery, or

injunctive relief) to a governmental unit under environmental statutes or regulations that any

entity would be subject to as an owner or an operator of any of the Acquired Assets after the date

of entry of this Order or (b) authorizes the transfer to Purchaser of any governmental licenses,

permits, registrations, authorizations, or approvals under environmental statutes or regulations

without compliance with all applicable legal requirements under the law governing such

transfers; provided, that, notwithstanding such provision, nothing herein shall be construed to

permit a governmental agency to obtain penalties from Purchasers for days of violations of any

environmental law or regulation that occurred prior to Closing as a result of the operation of the Acquired Assets.

50.     The failure specifically to include any particular provisions of the Asset Purchase Agreement, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of the Court that the Asset Purchase Agreement and each document, agreement, or instrument executed in connection therewith be authorized and approved in its entirety.

51.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

52.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Cases, the terms of this Order shall govern.

53.     To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

54.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

55.     The provisions of this Order are nonseverable and mutually dependent.

56.    Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Order shall be effective immediately upon entry, and the Debtors and the Purchasers are authorized to close the Sale immediately upon entry of this Order.

57.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

58.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale or the Transaction.

Dated: _____, 2013
       Wilmington, Delaware

                                         _____
                                         CHRISTOPHER S. SONTCHI
                                         UNITED STATES BANKRUPTCY JUDGE