**EXHIBIT 1**

**STIPULATION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                      :    Chapter 11

FURNITURE BRANDS,                           :    Case No. 13-12329 (CSS)
INTERNATIONAL, INC., *et al.*,

                       Debtors. [1]        :    (Jointly Administered)

## STIPULATION RELEASING CLAIMS AGAINST NON-DEBTOR FOREIGN SUBSIDIARIES AND RESOLVING THE STALKING HORSE PURCHASER'S ELECTION PURSUANT TO SECTION 7.11 OF ASSET PURCHASE AGREEMENT

This Stipulation is entered into by and among (i) Furniture Brands International, Inc. and

its affiliated debtors and debtors in possession in the above captioned jointly administered cases

(collectively, the "Debtors"), (ii) the Debtors' non-debtor affiliates or subsidiaries, Furniture

Brands Asia, Ltd., Furniture Brands Hangzhou Co., Ltd., Furniture Brands de Mexico S. de R.L.

de C.V., Maitland-Smith Asia Holdings Limited, Maitland-Smith Export (L) Bhd., Maitland-

Smith Cebu, Inc., Decorative Hardware Solutions (L) Bhd., P.T. Maitland-Smith, and Maitland-

Smith, Limited, (iii) Furniture Brands Canada ULC, a bankrupt corporation pursuant to a

voluntary assignment in bankruptcy filed on September 9, 2013 under the Bankruptcy and

Insolvency Act (Canada) (collectively with the non-debtor affiliates or subsidiaries listed in

clause (ii), the "Foreign Subsidiaries"), (iv) the Official Committee of Unsecured Creditors (the

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: Furniture Brands International, Inc. (7683); Action Transport, Inc. (7587); Broyhill Furniture Industries, Inc. (3217); Broyhill Home Furnishings, Inc. (8844); Broyhill Retail, Inc. (8843); Broyhill Transport, Inc. (1721); Furniture Brands Holdings, Inc. (2837); Furniture Brands Operations, Inc. (4908); Furniture Brands Resource Company, Inc. (1288); HDM Furniture Industries, Inc. (7484); HDM Retail, Inc. (6125); HDM Transport, Inc. (4378); Lane Furniture Industries, Inc. (5064); Lane Home Furnishings Retail, Inc. (9085); Laneventure, Inc. (8434); Maitland-Smith Furniture Industries, Inc. (7486); Thomasville Furniture Industries, Inc. (6574); Thomasville Home Furnishings, Inc. (3139); Thomasville Retail, Inc. (f/k/a Classic Design Furnishings, Inc.) (6174). The Debtors' corporate headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

"Committee"), (v) the Pension Benefit Guaranty Corporation ("PBGC"), (vi) KPS Capital Partners, LP ("KPS"); and (vii) FBN Acquisition Holdings, LLC (the "KPS Purchaser"). This Stipulation refers to the Debtors, the Foreign Subsidiaries, the Committee, PBGC, KPS, and the KPS Purchaser collectively as the "Parties" and each individually as a "Party." The Parties hereby stipulate and agree as follows:

## RECITALS

WHEREAS, on September 9, 2013 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, each of the Foreign Subsidiaries is an affiliate or subsidiary of one or more of the Debtors but are not debtors in these chapter 11 cases;

WHEREAS, as of the Petition Date, Furniture Brands International, Inc. was the contributing sponsor, as defined in 29 U.S.C. § 1301(a)(13), of the Furniture Brands Retirement Plan (the "Pension Plan");

WHEREAS, PBGC estimates that, as of the Petition Date, the Pension Plan had unfunded pension obligations aggregating approximately $272 million (the "PBGC Asserted Claim"), which claim has neither been agreed to nor disputed by the Debtors or the Committee, or any other Party to this Stipulation;

WHEREAS, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides, in relevant part, that in the case of a single-employer plan, a "'controlled group' means, in connection with any person, a group consisting of such person and all other

2

persons under common control with such person . . . ." 29 U.S.C. § 1301(a)(14). ERISA further provides that all members of a "controlled group" shall incur joint and several liability for certain single-employer pension plan liabilities, including liability to the PBGC for "unfunded benefit liabilities" upon the termination of a single-employer pension plan. (*See* 29 U.S.C. §§ 1341; 1362);

**WHEREAS**, PBGC asserts that the Debtors and their Foreign Subsidiaries are members of a "controlled group" for purposes of ERISA;

**WHEREAS**, on September 18, 2013, the Office of the United States Trustee for the District of Delaware appointed seven of the Debtors' largest unsecured creditors, including PBGC, as members of the Committee in these cases;

**WHEREAS**, on October 3, 2013, the Court entered the *Order (I) Approving (A) Bidding Procedures; (B) Form and Manner of Notices; (C) Form of Asset Purchase Agreement, Including Bid Protections; (II) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sales, Including Treatment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Bidding Procedures Order"). Among other things, the Bidding Procedures Order approved, as the stalking horse bid for substantially all the Debtors' assets, the *Asset Purchase Agreement* dated as of October 2, 2013, as may be amended or supplemented from time to time (the "APA"), between and among the Debtors as sellers, the KPS Purchaser or its designees as purchaser, and KPS Special Situations Fund III, LP, KPS Special Situations Fund III (A), L.P., KPS Special Situations Funds III (Supplemental), LP, and KPS Special Situations Fund III (Supplemental – AIV), LP as guarantors solely for purposes of section 11.21 of the APA (collectively, the "KPS Guarantors" and, together with the KPS Purchaser, the "KPS Acquiring Entities");

**WHEREAS**, PBGC asserts that on October 15, 2013, liens against the assets of the Debtors and the Foreign Subsidiaries for unpaid minimum funding contributions in the amount of $2,171,338 ("Minimum Funding Liens") arose under 26 U.S.C. § 430(k);

**WHEREAS**, PBGC asserts that on October 23, 2013 (the "Lien Recording Date"), PBGC perfected the Minimum Funding Liens against the Foreign Subsidiaries other than Furniture Brands Canada ULC by filing lien notices with the Recorder of Deeds of the District of Columbia;

**WHEREAS**, section 7.11 of the APA provides, in relevant part, that the KPS Purchaser may make a written request on ten (10) days' notice that the Debtors cause the Foreign Subsidiaries to (i) file petitions for relief under chapter 11 of the Bankruptcy Code with the Court, and (ii) execute and deliver to the KPS Purchaser a joinder to the APA, pursuant to which each Foreign Subsidiary shall become a "Seller" under the APA;

**WHEREAS**, by letter dated October 21, 2013, the KPS Purchaser provided notice to the Debtors pursuant to section 7.11 of the APA of the KPS Purchaser's election to cause the Debtors to file petitions for relief under chapter 11 of the Bankruptcy Code with the Court for the Foreign Subsidiaries and to deliver a joinder to the APA for the Foreign Subsidiaries (the "Election"); and

**WHEREAS**, to address the concerns of KPS and the KPS Acquiring Entities with respect to, among other things, the potential that the Foreign Subsidiaries, as members of the Debtors' "controlled group," may be jointly and severally liable to PBGC for unfunded benefit liabilities upon the termination of the Pension Plan, and in order to avoid the costs, time, and disruption to these cases of filing separate bankruptcy petitions for each of the Foreign Subsidiaries, the Parties have negotiated in good faith and at arm's-length a mechanism for

preserving, resolving and, if appropriate, paying PBGC's potential claims against the Foreign

Subsidiaries, their successors, and their respective assets by the establishment of a reserve fund

and a resolution procedure on the terms and conditions set forth herein.

     **NOW THEREFORE**, in consideration of the promises and respective agreements set

forth herein, and the foregoing recitals which are incorporated into this Stipulation as an

agreement between the Parties, and other good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

**STIPULATION**

     1.     This Stipulation is subject to and conditioned upon the approval by the Court.

     2.     If the condition set forth in paragraph 1 above is not satisfied, this Stipulation

shall be deemed null and void and of no force or effect.  In such event, nothing (including

Recitals) contained in this Stipulation, any motion filed seeking an order from the Bankruptcy

Court approving this Stipulation, or any correspondence or other communications related to the

negotiation, drafting, or approval of this Stipulation, may be argued or deemed to be an

admission against any Party's interest in any litigation or other matter, and the Parties shall be

automatically returned to their respective positions status quo ante.

     3.     Upon the closing of the sale or sales of substantially all of Debtors' assets to KPS

and the KPS Acquiring Entities pursuant to the APA (the "KPS Sale") or to another buyer, the

Debtors shall segregate from the proceeds of a sale or sales the sum of $25,000,000.00 in a

separate, designated escrow account (the "Reserve") at the law firm of Hahn & Hessen LLP.

Prior to the resolution of the dispute concerning the Final Distribution as defined below, the

amount of the Reserve may be increased or decreased either (a) by written agreement among the

Debtors, the Committee, and PBGC, or (b) by further order of the Court after notice and a

5

hearing. There shall be no transfer or allocation of any funds from the Reserve except by (a) written agreement among the Debtors, the Committee, and PBGC, or (b) further order of the Court consistent with the terms of this Stipulation, or (c) pursuant to a confirmed chapter 11 plan of the Debtors. The existence and amount of the Reserve shall in no way limit or prevent any Party from arguing that PBGC is entitled to more or less than the sum of the amount of the Reserve on account of any claims that PBGC has under ERISA against one or more of the Foreign Subsidiaries.

4.    Upon, and subject to, the closing of the KPS Sale and the funding of the Purchase Price (as defined in the APA): (a) PBGC shall: (1) release the Foreign Subsidiaries from any and all claims, rights, and interests the PBGC may now, or in the future, have against any of the Foreign Subsidiaries or their respective assets; (2) not assert any and all liens the PBGC may now, or in the future, have against any of the Foreign Subsidiaries or their respective assets; and (3) withdraw the notices perfecting the Minimum Funding Liens against the assets of the Foreign Subsidiaries (collectively, the "Releases"), with all such claims, rights, liens, and interests attaching solely to the proceeds from the KPS Sale; and (b) the KPS Purchaser shall withdraw the Election with prejudice. Between the date of this Stipulation and the closing of the KPS Sale, (i) the Election shall be deemed tolled, (ii) the Debtors do not need to take any action in furtherance of the Election, and (iii) KPS and the KPS Purchaser agree not to make any other written requests pursuant to section 7.11 of the APA.

5.    This Stipulation and the Releases set forth herein shall be incorporated by reference in the order approving the KPS Sale.

6.    For the purposes of this Stipulation, PBGC's claims, rights, liens, and interests, including, but not limited to, the Minimum Funding Liens, against any of the Foreign

Subsidiaries or their respective assets will solely attach to the proceeds of the KPS Sale, with all such claims, rights, liens, and interests, to attach upon the closing of the KPS Sale to the cash proceeds of the sale with the same priority, validity, force, and effect which they now have as against the assets of the Foreign Subsidiaries, subject to any claims and defenses the Debtors or the Foreign Subsidiaries may possess with respect thereto.  For the purposes of this Stipulation, the proceeds of the KPS sale attributable to the value of the Debtors' assets, excluding the proceeds of the sale attributable to the assets of the Foreign Subsidiaries, shall be deemed to be applied first to satisfy the DIP Obligations as defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Superpriority, Senior Secured Basis and (B) Repay Existing Postpetition and Prepetition Term Loan in Full, (II) Granting Adequate Protection to Certain Prepetition Lenders, and (III) Modifying the Automatic Stay.*

7.     Subject to the Parties' reservations of rights contained herein, the Debtors, the Committee, and PBGC agree to work in good faith to try to estimate the distribution that PBGC would be entitled to receive as if (i) the Foreign Subsidiaries had filed chapter 11 petitions and become debtors, and (ii) the Foreign Subsidiaries' assets had been sold as part of the acquisition of substantially all the Debtors' assets under the KPS Sale.  Within ninety (90) days of the closing of the KPS Sale, (a) the Debtors and the Committee will provide PBGC with a proposed valuation as of the date of the KPS Sale of the assets and liabilities of the Foreign Subsidiaries and a proposed distribution to the creditors thereof (the "Proposed Valuation"), and (b) PBGC will provide the Debtors and the Committee a list of all claims that PBGC asserts against the Foreign Subsidiaries (the "Proposed PBGC Foreign Subsidiary Claim").

8.      Within thirty (30) days of receiving the Proposed Valuation, PBGC will advise the Debtors and the Committee in writing of its acceptance or rejection of the Proposed Valuation.

9.      Within thirty (30) days of receiving the Proposed PBGC Foreign Subsidiary Claim, the Debtors and the Committee will advise the PBGC in writing of its acceptance or rejection of the Proposed PBGC Foreign Subsidiary Claim.

10.     If PBGC rejects the Proposed Valuation and/or the Debtors and the Committee rejects the Proposed PBGC Foreign Subsidiary Claim, the Debtors, the Committee and the PBGC will endeavor to negotiate in good faith to reach a resolution.  If the Debtors, the Committee and the PBGC are unable to agree on a proposed distribution to the PBGC in settlement of its claims, rights, liens, and interests against the Foreign Subsidiaries and their assets (the "Proposed Distribution"), they will submit themselves to the jurisdiction of the Court for resolution.  The Court's decision with respect to the Proposed Distribution will be final and binding on the Parties after all appeals and rights to appeal are exhausted.

11.     Within ten (10) days of the amount of the Proposed Distribution being set by written agreement among the Debtors, the Committee and the PBGC or determined by final order of the Court (such amount to be known as the "Final Distribution"), Hahn & Hessen LLP shall be authorized to remit from the Reserve to the PBGC the amount, if any, of the Final Distribution and the balance, if any, of the Reserve to the Debtors' estates to be used in a manner consistent with the rest of the proceeds from the KPS Sale.  To the extent that the amount of the Final Distribution exceeds the amount of the Reserve (such excess, the "PBGC Excess Distribution Claim"), the Debtors' estates shall promptly remit to the PBGC from the rest of the proceeds from the KPS Sale the amount of the PBGC Excess Distribution Claim.

8

12.     To the extent that the KPS Sale does not close but a sale of substantially all the Debtors' assets, including the stock of the Foreign Subsidiaries, to a purchaser other than KPS and the KPS Acquiring Entities (the "Alternative Purchaser") is approved by the Court, the Committee and the Debtors are authorized to and agree to, and the PBGC agrees to, execute a stipulation on substantially similar terms as this Stipulation with the Alternative Purchaser, without the need for a further order of the Court.

13.     Notwithstanding anything contained in this Stipulation to the contrary, the Releases are final and binding on PBGC immediately upon, and subject to, the closing of the KPS Sale and the funding of the Purchase Price.

14.     Notwithstanding anything contained in this Stipulation to the contrary, and irrespective of the amount of the Reserve, nothing herein shall restrict the amount of any claim, right, or interest, if any, that PBGC may now, or in the future, have under ERISA against the Debtors, their remaining assets after the KPS Sale, and/or their estates.

15.     Notwithstanding anything contained in this Stipulation to the contrary, the PBGC may assert, and the Debtors and the Committee shall have the right to object to, any claim, right, lien, or interest, without limitation, under ERISA or otherwise relating to the Pension Plan against (i) any Debtor, (ii) any asset of any Debtor remaining after the KPS Sale, (iii) the Debtors' estates, and (iv) the Reserve.

16.     Except to the extent of the Releases, nothing herein shall be deemed (i) an admission by any Party with respect to liability, (ii) an admission as to the validity of any claim, right, lien, or interest of or against any Party, or (iii) a waiver of the rights of any Party to dispute any claim, right, lien, or interest.

17.     This Stipulation constitutes the entire agreement between the Parties with respect to the matter hereof.

18.     This Stipulation can only be amended or otherwise modified by a signed writing executed by the Parties.

19.     This Stipulation shall be governed by the laws of the State of Delaware.

20.     This Stipulation shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Stipulation, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Stipulation as a whole is purportedly prepared or requested by such Party.

21.     This Stipulation may be executed and delivered in any number of original, facsimile, or email counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument.

22.     The terms of this Stipulation shall become effective only upon the Court's entry of an order approving this Stipulation in a form agreeable to all the Parties. The Court shall retain jurisdiction over the Parties hereto with respect to this Stipulation including, without limitation, for the purposes of interpreting, implementing, and enforcing its terms.

*[Signature Pages Follow]*

10

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation as of the date set forth below.

**FURNITURE BRANDS INTERNATIONAL, INC.,** *et al.*

By: _____

     Name:

     Its:

Dated:  November 15, 2013

**FURNITURE BRANDS ASIA, LTD.**

By: _____

     Name:

     Its:

Dated:  November 15, 2013

**FURNITURE BRANDS HANGZHOU CO., LTD.**

By: _____

     Name:

     Its:

Dated:  November 15, 2013

11

**FURNITURE BRANDS CANADA ULC**

**Per: Schonfeld Inc. Trustee of the Estate of
Furniture Brands Canada ULC**

By: _____

    Name:  Robert Link

    Its:    Authorized Signing Officer

Dated:  November 15, 2013

**FURNITURE BRANDS DE MEXICO**
**S. DE R.L. DE C.V.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013


**MAITLAND-SMITH ASIA**
**HOLDINGS LIMITED**

By: _____

    Name:

    Its:

Dated:  November 15, 2013


**MAITLAND-SMITH EXPORT (L) BHD.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

13

**MAITLAND-SMITH CEBU, INC.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**DECORATIVE HARDWARE
SOLUTIONS (L) BHD.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**P.T. MAITLAND-SMITH**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**MAITLAND-SMITH, LIMITED**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

14

**MAITLAND-SMITH CEBU, INC.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**DECORATIVE HARDWARE
SOLUTIONS (L) BHD.**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**P.T. MAITLAND-SMITH**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

**MAITLAND-SMITH, LIMITED**

By: _____

    Name:

    Its:

Dated:  November 15, 2013

14

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FURNITURE BRANDS
INTERNATIONAL, INC., *ET AL.***

By: _____

Name:  Martin Leder

Its:      Co-Chair

Dated:  November 15, 2013

15

**PENSION BENEFIT GUARANTY
CORPORATION**

By: _Robert D. Bacon_

    Name:  Robert D. Bacon

    Its:     Deputy Director, Corporate Finance
            and Restructuring Department

Dated:  November 15, 2013

16

**KPS CAPITAL PARTNERS, LP**

By: _____

Name: Raquel Palmer

Its:      Authorized Signatory

Dated: November 15, 2013

**FBN ACQUISITION HOLDINGS, LLC**

By: _____

Name: Raquel Palmer

Its:      Authorized Signatory

Dated: November 15, 2013

17