**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------ x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
FBI WIND DOWN, INC. (f/k/a Furniture                   :   Case No. 13-12329 (CSS)
Brands International, Inc.), et al.,                   :
                                                       :   Jointly Administered
              Debtors.¹                                :
                                                       :   Proposed Hearing Date: December 12, 2013 at 11:00 a.m. (ET)
                                                       :   Proposed Obj. Deadline: December 9, 2013 at 4:00 p.m. (ET)
------------------------------------------------------ x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 363(b) AND 503(c) OF THE
BANKRUPTCY CODE FOR ORDER APPROVING
ENGAGEMENT AGREEMENT WITH MEREDITH M. GRAHAM
<u>*NUNC PRO TUNC*</u> TO NOVEMBER 25, 2013**

FBI Wind Down, Inc. (f/k/a Furniture Brands International, Inc.) ("FBN") and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105(a), 363(b) and 503(c) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing and approving an engagement agreement (the "Engagement Agreement") in the form attached hereto as Exhibit B, *nunc pro tunc* to November 25, 2013. Under the Engagement Agreement, Meredith M. Graham will serve as the sole director and officer of the Debtors to oversee the winding down of the Debtors' chapter 11 estates. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: FBI Wind Down, Inc. (7683); AT Wind Down, Inc. (7587); BFI Wind Down, Inc. (3217); BHF Wind Down, Inc. (8844); BR Wind Down, Inc. (8843); BT Wind Down, Inc. (1721); FBH Wind Down, Inc (2837); FBO Wind Down, Inc. (4908); FBRC Wind Down, Inc. (1288); HFI Wind Down, Inc. (7484); HR Wind Down, Inc. (6125); HT Wind Down, Inc. (4378); LFI Wind Down, Inc. (5064); LHFR Wind Down, Inc. (9085); LV Wind Down, Inc. (8434); MSFI Wind Down, Inc. (7486); TFI Wind Down, Inc. (6574); THF Wind Down, Inc. (3139); and TR Wind Down, Inc. (6174). The Debtors' corporate headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

**PRELIMINARY STATEMENT**

1. On November 22, 2013, the Court entered the *Order (I) Approving Sale of All Acquired Assets; (II) Authorizing Assumption and Assignment of Executory Contractors and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 833] (the "Sale Order") pursuant to which the Debtors were authorized to sell substantially all their assets (the "Sale") to certain affiliates of KPS Capital Partners, LP (collectively, the "Purchasers"). The Sale closed on November 25, 2013, and substantially all of the Debtors' employees were offered employment with the Purchasers.

2. Although the Debtors' have sold most of their assets, they must nonetheless continue the process of winding down these estates, including coordination of post-closing transactions with the Purchasers, liquidation of residual assets that were excluded from the Sale, and confirmation of a chapter 11 plan of liquidation. To that end, the Debtors, in consultation with the professionals representing the official committee of unsecured creditors appointed in these cases (the "Committee"), have been working through the logistics of the wind down to ensure that the Debtors' estates continue to be competently and efficiently managed.

3. Since prior to the Petition Date, Meredith Graham has served as the General Counsel and Chief Administrative Officer for all of the Debtors and as a director on the boards of each of the Debtors other than FBN. Following extensive, arms' length negotiations between the Debtors and the Committee, the parties have concluded that the estates should retain Meredith Graham to lead a small team of employees who will (i) protect and preserve the Debtors' assets, (ii) oversee and direct the activities of the Debtors' professionals, and (iii) manage the administration of the chapter 11 estates as the Debtors wind down operations, each with a view toward minimizing cost and maximizing efficiency. The continued

employment of Ms. Graham in this expanded role will be beneficial to the estates as Ms. Graham, by virtue of her existing position with the Debtors, has an intimate knowledge of the Debtors' financial and operational affairs and will be able to assist the Debtors' professionals in addressing any wind down issues that may arise, including bringing any potential objections to claims and proofs of claim, or adversary proceedings, as necessary in the administration of the estates. Moreover, Ms. Graham will continue to receive the same base compensation she has been paid during her service as the Debtors' General Counsel and Chief Administrative Officer.

4.     On November 25, 2013, FBN's board of directors approved the Engagement Agreement, including the appointment of Ms. Graham as a director of FBN. The Committee has reviewed, and has no objection to, the Engagement Agreement and this Motion.

## BACKGROUND
### General

5.     On September 9, 2013 (the "Petition Date"), the Debtors commenced voluntary cases under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On September 18, 2013, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 147]. These chapter 11 cases have been consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

7.     On the Petition Date, the Debtors filed their *Motion for Orders: (I) Approving (A) Bidding Procedures; (B) Form and Manner of Notices; (C) Form of Asset Purchase*

*Agreement, Including Bid Protections; (II) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief; and (IV)(A) Approving Sale of Substantially All of Acquired Assets; (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 26]. On November 22, 2013, the Court entered the Sale Order. On November 25, 2013 (the "Closing Date"), the Sale was consummated and substantially all of the Debtors' assets were acquired by the Purchasers. With the Sale having closed, the Debtors' remaining tasks include (i) coordinating any remaining tasks associated with the Sale, (ii) completing the administration of the chapter 11 cases, and (iii) proposing and seeking confirmation of a chapter 11 plan.

## Ms. Graham's Services Will Benefit the Estates

8.      As a result of the Sale, almost all of the Debtors' employees are now employed by the Purchasers rather than the Debtors. Moreover, all of the existing directors on FBN's board of directors indicated that they intended to resign immediately after closing the Sale. Realizing that the estates would need managerial and board oversight following the Sale and the transition of the Debtors' workforce to the Purchasers, over the past few weeks the Debtors, the Committee and Ms. Graham engaged in extensive negotiations about retaining Ms. Graham to assist in the Debtors' post-Sale wind down. These negotiations have resulted in Ms. Graham's willingness to accept and perform the role of administrative officer and director for the estates from November 25, 2013 (the "Commencement Date") until the later of (i) six (6) months following the Commencement Date or (ii) the effective date (the "Plan Effective Date") of any plan or plans confirmed by the Court under chapter 11 of the Bankruptcy Code in these cases (the "Chapter 11 Plan") under the terms set forth in the Engagement Agreement. As of the Commencement Date,

4

but subject to the entry by the Court of an order approving the Engagement Agreement, Graham shall be appointed the sole officer and director of the Debtors and shall perform the duties in connection therewith.

9.  The Debtors and the Committee believe that the services that will be provided by Ms. Graham as administrative officer and director for the estates will be invaluable and will assist the Debtors in winding down these estates in an efficient and cost-effective manner due to Ms. Graham's extensive knowledge of the Debtors, as well as their assets and creditors. Among other things, the estates will need to prepare tax documents for 2013 such as IRS Form W-2s for former employees, adjust and modify insurance coverage, identify claims for potential objections, identify causes of action that can be brought for the benefit of the estate, and respond to issues that may arise in the wake of the Sale. Ms. Graham's legacy experience as General Counsel and Chief Administrative Officer to the Debtors makes her uniquely qualified to address and efficiently manage the administration of these cases at this critical juncture.

## The Engagement Agreement

10.  The material terms of the Engagement Agreement are summarized below:[2]

- Term: The Engagement Agreement will become effective on the Commencement Date and will continue until the later of (i) six (6) months following the Commencement Date or (ii) the Plan Effective Date.

- Duties: Ms. Graham's duties as the Debtors' administrative officer and director shall include the following:

    o  Identifying wind-down staff required to assist the Debtors with post-Closing Date matters;

    o  Marshaling and liquidating the assets which were not acquired by the Purchaser pursuant to the Sale (the "Excluded Assets");

---

[2] To the extent that there are any inconsistencies between this summary and the terms of the Engagement Agreement, the terms of the Engagement Agreement shall control.

5

- Directing and overseeing the Debtors' professionals in the performance of their duties,

- Establishing one or more accounts into which shall be deposited all funds of the Debtors not required to be deposited into any other account, reserve, or escrow;

- Investing all cash held by the Debtors following the closing of the Sale in accordance with Bankruptcy Code section 345 or as otherwise permitted by a final order of the Court;

- Handling the Debtors' employee benefits, as applicable;

- Procuring, canceling and/or modifying insurance;

- Filing local, state and federal tax returns;

- Reviewing, as appropriate, proofs of claim and overseeing the preparation, prosecution and resolution of claims objections;

- Interfacing with the Purchasers on questions concerning acquired assets, former employees and related matters;

- Maintaining appropriate books and records;

- Overseeing the preparation and posting to the general ledger and preparing a final trial balance;

- Reconciling and approving any amounts due to or from the Purchasers post-closing;

- Overseeing the formulation, filing, and confirmation of a consensual Chapter 11 Plan;

- Executing declarations and being available to testify on behalf of the Debtors as may be needed in connection with these chapter 11 cases;

- Assisting in the identification of potential claims and causes of action owned by the Debtors;

- Assisting and, if appropriate, responding to any motion or application filed in these chapter 11 cases;

- Overseeing the cancellation, withdrawal, or wind down of the Debtors' corporate entities in the various states in which they no longer do business;

- Overseeing the termination of the Debtors' 401(k) plan;

- Overseeing the issuance of IRS Form W-2's to former employees and IRS Form 1099's;

- o Indexing and storage of required records;

- o Meeting periodically, either telephonically or in person as be necessary or appropriate, with the members and/or professionals of the Committee to discuss major issues that arise in the Debtors' chapter 11 cases;

- o Procuring equipment and supplies, and enter into contracts, as needed in the ordinary course of business for the administration of the estates;

- o Preparing and filing U.S. Trustee monthly operating reports until Plan Effective Date;

- o Paying timely fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Plan Effective Date; and

- o Assisting in any other wind down activities that the Debtors may require.

- Board of Directors

  - o The Court's approval of the Engagement Agreement (i) shall be deemed to amend the Debtors' Bylaws and the Certificate of Incorporation to authorize and appoint Graham as the sole officer and director of each of the Debtors, and (ii) shall supersede any state or local law requiring a vote of the shareholders to elect Graham an officer or director.

- Compensation:

  - o Ms. Graham will be compensated at her base prepetition salary of $286,000.00 per year *pro rata* from the Commencement Date and through and including the Termination Date (as defined in the Engagement Agreement) (the "Base Compensation").

  - o In addition to the Base Compensation, provided that a Termination Date has not occurred prior to the Plan Effective Date, Ms. Graham will be entitled to receive a one-time bonus equal to the following percentages of her the Base Compensation if the Debtors confirm a consensual Chapter 11 Plan with the substantial assistance of Ms. Graham by the following deadlines:

| Deadline by Which the Plan Effective Date Must Occur | Bonus Percentage of Base Compensation |
|---|---|
| On or before April 30, 2014, | 100% |
| Between May 1, 2014 and May 31, 2014 | 75% |
| Between June 1, 2014 and June 30, 2014 | 50% |

- o  In the event that, notwithstanding Ms. Graham's best efforts, the Plan Effective Date does not occur by June 30, 2014, Ms. Graham and the Committee agree to negotiate in good faith regarding a reasonable amount for an alternative Bonus. In addition, it is acknowledged and agreed that the bonus described above is in addition to, and not in lieu of, the bonus which shall be paid to Ms. Graham in December, 2013, under the Key Employee Incentive Plan approved by the Bankruptcy Court [Docket No. 347].

- Benefits:  The Debtors will pay or reimburse Ms. Graham for the cost of COBRA premiums for continued health care coverage for her and any of her family during the term of the Engagement Agreement.

- Expense Reimbursement:  Ms. Graham will be entitled to reimbursement for reasonable expenses incurred in performing her duties, and shall submit a report of said expenses to the Debtors for reimbursement.

- Vacation Pay: Ms. Graham will be entitled to payment of all accrued but unused vacation pay, without the necessity of filing a proof of claim or request for payment of administrative expenses with the Bankruptcy Court.

11.     On November 25, 2013, the Debtors' Board of Directors approved the Engagement Agreement and authorized the appointment of Ms. Graham as sole officer and director of the Debtors, subject only to the approval of the Court.  Thereafter, the members of the board resigned.

## JURISDICTION

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory bases for the relief requested herein are sections 105(a), 363(b), and 503(c) of the Bankruptcy Code.

## RELIEF REQUESTED

14.     By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 363(b), and 503(c) approving the Engagement Agreement with Ms. Graham, who as the Debtors'

sole officer and director, in consultation with the Debtors' professionals, will manage the wind down of the Debtors' estates and the administration of these chapter 11 cases.

## BASIS FOR THE RELIEF REQUESTED

15. To enable the Debtors to wind down their estates and take the necessary corporate actions to conclude the cases (*e.g.,* reviewing and paying administrative expenses, reconciling proofs of claim, preparing and filing operating reports and tax returns, and working with the Committee to confirm a Chapter 11 Plan), the Debtors have determined that Ms. Graham is uniquely qualified to serve in the role as the Debtors' sole officer and director to manage and administer their wind down, and together with the Committee, the parties have negotiated the terms of the Engagement Agreement for which the Debtors seek Court approval. Based on her experience as Debtors' Chief Administrative Officer and General Counsel, Ms. Graham is familiar with the Debtors' businesses and financial affairs, and she possesses the necessary knowledge to lead the wind down of the Debtors' estates efficiently and effectively.

### The Debtors Have Exercised Sound Business Judgment Under Section 363 of the Bankruptcy Code

16. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[3] The use, sale, or lease of property of the estate, other than in the

---

[3] 11 U.S.C. § 363(b)(1).

ordinary course of business, is authorized when a "sound business purpose" justifies such action.[4]

17.     It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[5]  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"[6]  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.[7]

18.     Valid business reasons clearly exist for the approval of the Engagement Agreement.  As an initial matter, Ms. Graham has successfully fulfilled many of these functions since the Petition Date as the Debtors' General Counsel and Chief Administrative Officer.  Almost all of the Debtors' other employees, including senior management, have either been terminated or they are now employed by the Purchasers.  Someone with Ms. Graham's background and experience is absolutely essential to effectuate the wind down of the Debtors' estates now that the Sale has closed.  Ms. Graham has the requisite experience and willingness to

---

[4]     *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (stating that "in determining whether to authorize the use, sale, or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions"); *see also Myers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under §363(b) when there is a legitimate business justification); *In re Del. & Hudson R.R. Co.,* 124 B.R. 169, 176 (D Del. 1991) (explaining that the Third Circuit has adopted the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

[5]     *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

[6]     *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

[7]     *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

take the actions necessary to wind down the Debtors' estates and comply with the Bankruptcy Code, Bankruptcy Rules and guidelines promulgated by the U.S. Trustee.

19.     Moreover, having Ms. Graham perform these functions will be significantly more cost effective than if they were performed by a completely new party.  Anyone coming into these cases for the first time would have to spend a significant amount of time familiarizing themselves with the Debtors' financial affairs, assets and creditors.  The extra time and expense associated with someone forced to "learn on the job" would both delay and diminish the recovery to creditors.

### The Engagement Agreement Should Be Approved under Section 503(c) of the Bankruptcy Code

20.     Section 503(c)(3) of the Bankruptcy Code permits payment as an administrative expense of other transfers or obligations that may be outside the ordinary course of business, except to the extent such transfers are "not justified by the facts and circumstances of the case…."[8]  The standard for approval under that section—justified by the facts and circumstances of the case—is essentially the same as the standard for similar transactions under section 363(b)(1) of the Bankruptcy Code.  As Judge Walrath remarked, "[I] find [the 503(c) standard] quite frankly nothing more than a reiteration of the standard under section 363."[9]

21.     For the reasons described above, the terms of the Engagement Agreement are justified by the "facts and circumstances" of these cases, and the Debtors should be authorized to retain Ms. Graham and incur the obligations thereunder as administrative expenses pursuant to section 503(b) of the Bankruptcy Code.  The terms of the Engagement Agreement are reasonable, as articulated above, because Ms. Graham's institutional knowledge of the Debtors'

---

[8]     *See* 11 U.S.C. § 503(c)(3).

[9]     See Transcript from In re Nobex Corp., Case No. 05-20050 (Bankr. Del. Jan. 12, 2006) (Walrath, C.J.).

operations are needed to efficiently address the remaining issues in these cases, including, among other things: (i) completing outstanding audit and tax requirements, (ii) complying with guidelines promulgated by the Bankruptcy Court and the U.S. Trustee, and (iii) assisting with claims reconciliation.  Based on the duties listed that need to be fulfilled, the compensation to be paid to Ms. Graham under the terms of Engagement Agreement is fair and reasonable.

## **REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)**

22.     The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Under Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons set forth above, the Debtors require that Ms. Graham continue her duties without interruption because the Debtors' employees have transferred their employment to the Purchasers and all other members of FBN's Board of Directors have resigned.  Thus, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## **NOTICE**

23.     Prior to filing this Motion, the Debtors conferred with the Committee regarding the relief sought here and the Debtors have been informed that Committee has no objection to this Motion.

24.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; and (c) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

## **NO PRIOR REQUEST**

25.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: November 26, 2013
     Wilmington, Delaware

*/s/ Jaime Luton Chapman*
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Luc A. Despins (Admitted Pro Hac Vice)
Leslie A. Plaskon (Admitted Pro Hac Vice)
James T. Grogan (Admitted Pro Hac Vice)
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel for the Debtors and Debtors in Possession*