## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| FBI WIND DOWN, INC. (f/k/a Furniture Brands International, Inc.), *et al.*, | : Case No. 13-12329 (CSS) |
| | : (Jointly Administered) |
| Debtors.[1] | : **Hearing Date:  11/24/2014 at 10:00 a.m. (ET)** |
| | : **Objection Deadline: 11/3/2014 at 4:00 p.m. (ET)** |

### MOTION OF THE LIQUIDATING TRUSTEE FOR ENTRY OF AN ORDER ESTABLISHING BIDDING PROCEDURES RELATED TO THE SALE OF REAL PROPERTY LOCATED AT 5380 & 5326/5346 HIGHWAY 145 SOUTH, TUPELO, MS

Alan D. Halperin, Esq., the Liquidating Trustee of the FBI Wind Down, Inc. Liquidating Trust (the "Liquidating Trustee") established pursuant to this Court's July 14, 2014 Order confirming the *Second Amended Joint Plan of Liquidation* (the "Plan") of FBI Wind Down, Inc. (f/k/a Furniture Brands International, Inc.) and its affiliated debtors in the above captioned cases (collectively, the "Debtors"), by his co-counsel Blank Rome LLP and Hahn & Hessen LLP, hereby moves (the "Motion") for entry of an order, substantially in the form of **Exhibit "A"** attached hereto (the "Bidding Procedures Order"), establishing procedures (the "Bidding Procedures," a copy of which is attached as **Exhibit "1"** to the Bidding Procedures Order) for the submission and consideration of competing offers for the sale of the real property located at 5380 & 5326/5346 Highway 145 South, Tupelo, MS (the "Property").  In support of this Motion, the Liquidating Trustee respectfully represent as follows:

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are:  FBI Wind Down, Inc. (7683); AT Wind Down, Inc. (7587); BFI Wind Down, Inc. (3217); BHF Wind Down, Inc. (8844); BR Wind Down, Inc. (8843); BT Wind Down, Inc. (1721); FBH Wind Down, Inc. (2837); FBO Wind Down, Inc. (4908); FBRC Wind Down, Inc. (1288); HFI Wind Down, Inc. (7484); HR Wind Down, Inc. (6125); HT Wind Down, Inc. (4378); LFI Wind Down, Inc. (5064); LHFR Wind Down, Inc. (9085); LV Wind Down, Inc. (8434); MSFI Wind Down, Inc. (7486); TFI Wind Down, Inc. (6574); THF Wind Down, Inc. (3139); and TR Wind Down, Inc. (6174).

## PRELIMINARY STATEMENT

1.      As described more fully below, the Liquidating Trustee has received competing bids for the Property from McCormick Drive LLC ("McCormick") and United Furniture Industries, Inc. ("UFI").  Specifically, the Liquidating Trustee, on behalf of Debtor LFI Wind Down, Inc., and McCormick entered into the McCormick PSA[2] whereby the Liquidating Trustee agreed, subject to the Residual Asset Procedures, to sell the Property to McCormick for a purchase price of $950,000.  The McCormick PSA specifically requires the Liquidating Trustee to file a Transaction Notice in accordance with the Residual Asset Procedures previously approved by this Court and if no objection is received within ten (10) days, the Liquidating Trustee is authorized to proceed with the sale.  However, following the Liquidating Trustee's filing of a Transaction Notice with the Court proposing to consummate the McCormick transaction, UFI timely filed a Transaction Objection to the McCormick sale and submitted a higher and better offer consisting of a good faith deposit, $1.2 million purchase price, and importantly, the elimination of any due diligence condition or other contingencies.

2.      Given the Liquidating Trustee's fiduciary duty to maximize value with respect to the Property, the Liquidating Trustee has requested that both bidders participate in an auction for the Property which will ensure that the highest and best price is achieved.

3.      In order in ensure that the auction process is open and fair for both bidders, the Liquidating Trustee requests that the Court enter the proposed Bidding Procedures Order.  The proposed procedures are straightforward and, if approved, will dispel any concerns about the process by clearly setting forth the ground rules for continued participation in the sale process.

---

[2]    Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them in the Motion.

The Liquidating Trustee has prepared the proposed Bidding Procedures and transmitted them to counsel to McCormick and UFI in advance of filing this motion.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to and in accordance with Article XIV of the Plan, and Paragraph 33 of the Confirmation Order. Paragraph 33 of the Confirmation Order provides that "[p]ursuant to Article XIV of the Plan…the Court shall retain and have exclusive jurisdiction of all matters in connection with, arising out of or related to the Chapter 11 Cases the Plan pursuant to, and for the purposes of, section 105(a) and 1142 of the Bankruptcy Code."  Article XIV(h) of the Plan provides that the Court retains exclusive jurisdiction to "hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Liquidating Trust Agreement, any transactions contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing …"[3]

---

[3]     Paragraph 44 of the Confirmation Order provides, *inter alia*, that the Remaining Real Property (as defined in the Confirmation Order), which includes the Property:

> shall not be transferred to the Liquidating Trust on the Effective Date and each parcel of Remaining Real Property shall be deemed to remain an asset of the respective Debtor's Estate until such time as it is disposed of by the respective Debtor or the Liquidating Trustee determines, in his sole and absolute discretion, that it is appropriate to transfer such Remaining Real Property into the Liquidating Trust. Notwithstanding the foregoing, if any Remaining Real Property is not disposed of on or before January 31, 2015, the Liquidating Trustee shall, within 5 business days, either transfer such Remaining Real Property into the Liquidating Trust or file a motion to abandon such Remaining Real Property….

## RESIDUAL ASSET PROCEDURES

6.     On November 25, 2013, the Debtors sold substantially all of their assets to Heritage Home Group, LLC, an affiliate of KPS Capital Partners, LP ("HHG").  HHG agreed to exclude certain non-core assets from the sale, however, including an aircraft and approximately sixteen parcels of real property that were not needed by HHG for the ongoing operation of the Debtors' businesses (the "Residual Assets").

7.     To facilitate the disposition of the Residual Assets in an efficient and cost-effective manner, while still providing assurances to stakeholders that the highest and best values were obtained for the Residual Assets, on January 1, 2014, the Debtors filed a Motion Under Bankruptcy Code Sections 105(a), 327(a), 328(a), 330(a) and 363 and Bankruptcy Rules 2002 2014, 2016, and 6004(h) for Entry of Order (I) Approving Procedures to Sell, Lease or Otherwise Dispose of Residual Assets, (II) Authorizing the Retention of Brokers and Other Sales Agents, and (III) Waiving the Requirements of Local Bankruptcy Rule 2016-2 [D.I. 1113] (the "Residual Asset Motion").  By the Residual Asset Motion, the Debtors sought authority to sell, lease or otherwise dispose of the Residual Assets for the highest and best offer received pursuant to certain procedures (the "Residual Asset Procedures").

8.     Specifically, with regard to the sale of Residual Assets in any individual transaction or serious of related transactions to a single buyer or group of related buyers with an aggregate transaction price *up to or equal to $3 million*, the Residual Asset Procedures provide, in relevant part, that:

- The Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such sales, leases or dispositions are in the best interests of their estates, without further order of the Court, subject to the procedures set forth in the Residual Asset Motion;

- Any such transactions shall be free and clear of all liens with such liens attaching to the net proceeds of the transaction with the same validity, extent, and priority as immediately prior to the transaction;

- The Debtors are authorized to take any actions that are reasonable and necessary to close the sale, lease or disposition of Residual Assets and obtain the proceeds thereof;

- The Debtors shall file a written notice of the sale or transfer (a "Transaction Notice") with the Court and serve such Transaction Notice[4] on the specified notice parties, including any party that has expressed an interest in purchasing the relevant Residual Asset;

- Any objection to the proposed transaction (a "Transaction Objection") must be received by the Debtors within ten (10) calendar days from the date of service of the Transaction Notice.

- If no Transaction Objections are received within ten (10) calendar days of the service of the Transaction Notice, the Debtors may immediately consummate the proposed transaction and file a certification of counsel and proposed order approving the transaction with the Court.

- If a Transaction Objection is timely received by the Debtors and cannot be resolved consensually, then the Transaction Objection shall be heard at the next available hearing date in these cases and the Residual Asset(s) shall only be sold, leased or otherwise disposed upon further order of the Court.

9.      On February 7, 2014, the Court entered an order granting the Residual Asset Motion and approving the Residual Asset Procedures [D.I. 1198] (the "Residual Asset Order"). Pursuant to the Residual Asset Order, the Debtors were also authorized to retain professionals to assist them in disposing of the Residual Assets pursuant to specified retention procedures.

### UFI'S OBJECTION TO McCORMICK SALE

10.      Pursuant to the Residual Asset Order, the Debtors, after consultation with the Creditors' Committee, retained Hilco Real Estate LLC ("Hilco") to assist them in disposing of their real property Residual Assets, including the Property.  Hilco's marketing plan included a

---

[4]      The Transaction Notice shall describe in reasonable detail the Residual Asset(s) being sold, leased or otherwise disposed; (b) the counterparty to the proposed transaction; (c) the cash proceeds expected to be realized by the estates from the transaction; and the material terms of the agreement governing the transaction.

143903.01600/40212627v.1

pre-marketing/due diligence phase, marketing/advertising phase (which utilized print and digital advertising, email blasts, online listings, press releases, etc.) and a sales/negotiation phase, which culminated with the solicitation of "final and best" bids from interested parties.

11.    On August 6, 2014, following a robust marketing of the Property, the Liquidating Trustee, on behalf of LFI Wind Down, Inc., and McCormick entered into that certain Purchase and Sale Agreement dated as of August 6, 2014 (the "McCormick PSA").   Pursuant to the McCormick PSA, the Liquidating Trustee agreed to sell the Property[5] to McCormick for a purchase price of $950,000 (subject to certain adjustment), which represented the highest and best offer for the Property at that time.   The McCormick PSA included a 30 day due diligence period whereby McCormick was permitted to terminate the contract for any reason in its sole discretion.   Additionally, Article XIII of the McCormick PSA provides that "[t]he effectiveness of this Agreement and the transaction contemplated hereunder are subject to compliance with the procedures that have been established by the Bankruptcy Court in an order (the "Sale Procedures Order"), dated February 7, 2014, authorizing Seller to, among other things, sell certain assets including the Property."

12.    On September 23, 2014, following the expiration of McCormick's due diligence period[6], the Liquidating Trustee filed a Transaction Notice proposing to sell the Property

---

[5]    The Property is being sold subject to HHG's rights.   Specifically, HHG currently has a license to use the Property pursuant to that certain Transition Services Agreement (the "TSA") between HHG and the Debtors and the sale of the Property is subject to the terms of the TSA.   The personal property currently located at the Property is owned by HHG and shall not become Personal Property unless and until HHG has vacated the Property and abandoned any remaining Personal Property located at the Property.   In the event that HHG is still in possession of the Property pursuant to the TSA at the time of Closing, the parties agree that the Closing will occur as scheduled, without abatement or reduction in the Purchase Price, but that the parties will enter into an escrow agreement whereby 10% of the Purchase Price is held back from the sale proceeds at closing (to be distributed to Seller upon (i) vacation of the Property by HHG or (ii) Seller's assignment to Purchaser of its rights and obligations under the TSA solely with respect to the Property, including but not limited to Seller's rights with respect to indemnity for HHG's breach).

[6]    The Liquidating Trustee and McCormick agreed to a short extension of McCormick's diligence period under the McCormick PSA as a result of a delay in obtaining the necessary title work.

143903.01600/40212627v.1

pursuant to the terms of the McCormick PSA and in accordance with the Residual Asset Procedures.  The Transaction Notice established a Transaction Objection Deadline of October 3, 2014.

13.    On October 1, 2014, UFI filed an Objection to Notice of Proposed Transaction Involving Residual Asset Sale Procedures Order Re: 5380 & 5326/5346 Highway 145 South, Tupelo, MS [D.I. 2070] (the "UFI Transaction Objection"), whereby UFI objected to the sale contemplated in the McCormick PSA and stated that the $950,000 purchase price is "substantially less than UFI is willing to pay for the Real Property on substantially the same terms."

14.    Simultaneously, UFI submitted an executed Purchase and Sale Agreement for the Property which included a purchase price of $1,200,000, subject to certain adjustments (the "UFI PSA" or the "Baseline Bid")[7].  The UFI PSA eliminated all due diligence conditions or other contingencies.  On October 8, 2014, UFI wired the balance of their $125,000 good faith deposit to First American Title Insurance Company as escrow agent.

15.    The Baseline Bid represents a substantially improved purchase price for the Property compared to the McCormick offer (i.e., increased value of $250,000) and, significantly, removes any due diligence outs.  Thus, if no overbids are received, the Liquidating Trustee believes consummating the transaction contemplated by the Baseline Bid would be in the best interest of the Debtors' estates and bring finality with respect to the Property.  If, on the other hand, McCormick participates in the auction in accordance with the Bidding Procedures, the Liquidating Trustee, on behalf of the Debtors, will potentially realize additional cash value for the Property for the benefit of the Debtors' creditors and the bidder who submits the final highest

[7]    The Baseline Bid represents a slightly revised version of the PSA submitted by UFI on October 1, 2014.  The revised and final Baseline Bid was submitted by UFI on October 7, 2014.

143903.01600/40212627v.1

and best offer will be declared the successful bidder.  To date, McCormick has failed to confirm

that it intends to participate in a competitive auction.  Consequently, the Liquidating Trustee has

elected to file this Motion seeking Court approved Bid Procedures in order to bring UFI's

Objection to an appropriate resolution.

## RELIEF REQUESTED

16.    By this Motion, the Liquidating Trustee seeks to establish Court approved

procedures to bring a swift and efficient conclusion to the sale process for the Property that has

been ongoing for several months.  Specifically, the Liquidating Trustee requests the entry of the

Bidding Procedures Order attached hereto as **Exhibit "A"** approving the Bidding Procedures

(described below and attached as **Exhibit "1"** to the Bidding Procedures Order) related to the

potential auction for the Property.  The Liquidating Trustee believes that the Bidding Procedures

will permit a fair and competitive sale process and promote his continuing efforts to identify the

highest or best value for the Property for the benefit of Debtors' creditors and other parties in

interest.[8]

## OUTLINE OF BIDDING PROCEDURES

17.    The Bidding Procedures contemplate a process pursuant to which McCormick

will have the opportunity to submit a bid that is higher and better than the Baseline Bid and

participate in an auction.  As of the filing of this Motion, McCormick has not stated an

unwillingness to participate in the proposed auction.  If, prior to the hearing on the Motion,

McCormick informs the Liquidating Trustee and the Court that McCormick will not participate

in the proposed auction for the Property, and therefore no additional Overbids (defined below)

---

[8]    As provided below, if McCormick confirms in writing that it does not intend to participate in the proposed
auction for the Property, the Liquidating Trustee is prepared to seek approval of the proposed transaction with
UFI in accordance with the terms of the Baseline Bid at the hearing on the Motion.

8

are received for the Property, the Liquidating Trustee intends to seek Court approval of a sale of

the Property to UFI pursuant to the terms of the UFI PSA.  If McCormick announces that it will

participate in an auction or remains silent, the Liquidating Trustee requests that the Court

approve the Bidding Procedures described below and attached as **Exhibit "1"** to the Bidding

Procedures Order and schedule a hearing to approve the Successful Bid at the Court's earliest

convenience following the conclusion of the auction for the Property.

18.    The Bidding Procedures described below are straightforward.    There is no

breakup fee or expense reimbursement contemplated by the Bidding Procedures.    Specifically,

the Bidding Procedures provide, in relevant part, as follows:[9]

(i)    **Baseline Bid.**

UFI (the "Baseline Bidder") has submitted an executed Purchase and Sale
Agreement for the Property (the "Baseline Bid Agreement") which contemplates the sale
of the Property pursuant to 11 U.S.C. § 363 to the Baseline Bidder for a purchase price of
$1,200,000.  UFI and McCormick are both deemed eligible to participate in the Auction
(each, a "Qualified Bidder"), and the Baseline Bid and the McCormick PSA are both
deemed to be qualified bids (each a "Qualified Bid").

(ii)    **Auction.**

Hilco shall conduct a telephonic auction (the "Auction") at _____ (ET) on
_____, 2014 (the "Auction Date").

The Auction shall be governed by the following procedures:

(a)    The Qualified Bidders shall appear live telephonically at the Auction, or
through a duly authorized representative;

(b)    Bidding shall commence at the Baseline Bid of $1,200,000 (the "Auction
Baseline Bid");

(c)    Qualified Bidders may then submit successive bids in increments of at
least $25,000 higher than the Auction Baseline Bid at which the Auction
commenced and then continue in minimum increments of at least $25,000
higher than the previous bid (each, an "Overbid"); provided that the

---

[9]    This summary of the Bidding Procedures is for descriptive purposes only and to the extent of any conflict
between this description and the Bidding Procedures, the Bidding Procedures shall control.

Liquidating Trustee shall retain the right to modify the bid increment requirements or adjust for variance in the terms of the proposed transactions, as necessary in the conduct of the Auction;

(d)     The Qualified Bidders shall have the right to submit additional Overbids;

(e)     The Auction shall continue until there is only one bid that the Liquidating Trustee determines in his reasonable business judgment in consultation with his legal and financial advisors, subject to Bankruptcy Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Successful Bid").  The bidder submitting such Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities of the purchaser, as set forth in the applicable PSA setting forth the terms and conditions of the Successful Bid; and

(f)     Within two (2) business days after conclusion of the Auction, the Successful Bidder shall (a) complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and (b) increase its deposit with First American Title Insurance Company as escrow agent (the "Good Faith Deposit") to ten percent (10%) of the Successful Bid.

(iii)   **No Overbids Received.**

If no Overbids are received from the Qualified Bidders, then the Liquidating Trustee shall not hold an Auction and instead shall request at the Sale Approval Hearing (as defined below) the Bankruptcy Court approve the Baseline Bid Agreement with the Baseline Bidder.

(iv)    **Back-Up Bid.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best bid at the Auction, as determined by the Liquidating Trustee, in the exercise of his reasonable business judgment, may be designated as the backup bidder (the "Backup Bidder").  The Backup Bidder shall be required to keep its initial bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the final respective Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m.  (prevailing Eastern Time) on the date that is ten (10) days after the date of entry of the Sale Order or the closing of the transaction with the Successful Bidder (the "Outside Backup Date").

If the Successful Bidder fails to timely consummate the purchase of the Property pursuant to the terms and conditions of the applicable Purchase Agreement, including the Baseline Bid Agreement, then the Backup Bidder may be designated by the Liquidating Trustee as the Successful Bidder, and the Liquidating Trustee shall be authorized, but not required, to consummate the transaction with the Backup Bidder as soon as is

commercially reasonable.  If the Successful Bidder fails to consummate the purchase of the Property because of a breach, default, or failure to perform on the part of such Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Liquidating Trustee and the Liquidating Trustee's sole and exclusive remedy with respect to the Successful Bidder's failure to timely consummate the purchase of the Property in accordance with the terms and conditions of the applicable Purchase Agreement, including the Baseline Bid Agreement, shall be to receive as liquidated damages the defaulting Successful Bidder's deposit, and thereafter neither the Successful Bidder nor the Liquidating Trustee shall have any further liability or obligation to the other.  For the avoidance of doubt, if the Liquidating Trustee designates the Backup Bidder as the Successful Bidder pursuant to the terms of this paragraph, the terms of the immediately preceding sentence shall apply with equal force and effect to the Backup Bidder who, for such purposes, shall be deemed the Successful Bidder.

(v) **Sale Approval Hearing.**

The Successful Bid (or the Baseline Bid Agreement if no Overbid is received) will be subject to approval by the Bankruptcy Court.  The hearing to approve the Successful Bid (or the Baseline Bid Agreement if no Overbid is received) shall take place on December 16, 2014 or such other date as the Court may set.

(vi) **Return of Deposits.**

The Good Faith Deposits of the Qualified Bidders shall be held by First American Title Insurance Company as escrow agent, but shall not become property of the estate absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than three (3) business days after the Auction.  The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of forty-eight (48) hours after (a) the closing of the transaction with the Successful Bidder for the assets bid upon by such Backup Bidder and (b) the Outside Backup Date.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder timely closes its winning transaction, its Good Faith Deposit shall be credited towards its purchase price.  To the extent of any conflict between the terms of this Paragraph and the Baseline Bid or other Qualified Bid, the terms of this Paragraph shall control.

19.     The Liquidating Trustee believes that the proposed Bidding Procedures promote his fiduciary duty to identify the highest or best offer for the sale of the Property.  Further, the Liquidating Trustee submits that the proposed Bidding Procedures are fair and reasonable under the circumstances of these cases and are reasonably calculated to induce the parties to submit

offers for the Property, thereby ensuring that the maximum value may be recovered for the Debtors' creditors.

<h2 style="text-align:center">BASIS FOR THE RELIEF REQUESTED</h2>

20.     Section 363(b) of the Bankruptcy Code provides that "[t]the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A proposed use or sale of property pursuant to section 363(b) is appropriate if "some articulated business judgment" exists for the transaction. *See, e.g., Meyers v. Martin (In re Martin), 91* F.3d 389, 395 (3d Cir. 1996); *Fulton State Bank v. Schipper (In re Fulton State Bank), 933* F.2d 513, 515 (7th Cir. 1991); *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).

21.     Bankruptcy courts applying section 363 routinely consider and approve bidding procedures in advance of a proposed sale of property of the estate. *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (noting that the district court had required specified minimum overbid amounts, deposits, and the form of purchase agreement to be used by bidders); *In re Adelphia Commc'n Corp.,* 336 B.R. 610, 629-30 (Bankr. S.D.N.Y. 2006) ("It is the common practice for bankruptcy courts, in connection with the sales of businesses or lines of business, to enter orders approving bidding procedures and bidding-related obligations . . . before being asked to approve the resulting sale itself."); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 878-79 (Bankr. S.D.N.Y. 1990) (noting that the bankruptcy court had entered an order requiring that overbids be made in specified minimum increments with deposits).

22.     A debtor's business judgment is entitled to great deference with respect to the procedures to be used in selling estate assets. *See, e.g.*, *Official Comm. of Subordinated Bondholders* v. *Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656-57

12

(S.D.N.Y. 1992).  In analyzing the propriety of bidding procedures, a court will examine whether such procedures allow third parties to submit higher or better bids and whether potential bidders have sufficient opportunity to conduct their own due diligence.  *In re Edwards, 228* B.R. 552, 561 (Bankr. E.D. Pa. 1998) (requiring bid procedures that allow for "an open and fair public sale designed to maximize value for the estate"); *In re Fin. News Networks, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991).  Moreover, the hallmarks of good faith in any sale procedure are the receipt of adequate value through a process that solicits higher or better offers and provides for full and accurate disclosure of the terms of the proposed sale to third parties invited to bid.

23.    The paramount goal in pursuing the sale of the debtor's property is to maximize value for the benefit of the estate.  *See, e.g., In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor in possession had fiduciary duty to protect and maximize the estate's assets); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 561-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

24.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing value and are appropriate in the context of bankruptcy sales.  *See, e.g.*, *In re Integrated Res., Inc.,* 147 B.R. at 659 (stating such procedures should "encourage bidding and [ ] maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.,* 126 B.R. at 156 (stating that "court-imposed rules for the disposition of

13

assets . . . [should] provide an adequate basis for comparison of offers, and [ ] provide for a fair and efficient resolution of bankrupt estates").

25.     Here, the proposed Bidding Procedures will allow and encourage the Qualifying Bidders to submit competing bids and participate in the Auction, thereby maximizing the value that the Debtors' estates will receive for the Property.  At the same time, the Bidding Procedures will ensure that the Qualifying Bidders will provide increased value to the estate than what UFI has offered in the Baseline Bid.  Through this open process, the Liquidating Trustee will be able to determine the highest or best return possible for the Property.

26.     The proposed Bidding Procedures will also assist the Liquidating Trustee in conducting the Auction in a controlled, fair and open fashion that will encourage participation by the Qualified Bidders.  The Bidding Procedures and the Baseline Bid (1) will encourage, rather than hinder, bidding for the Property, (2) are consistent with other procedures previously approved by courts in this district, and (3) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  *Accord In re O'Brien Envtl. Energy, Inc.,* 181 F.3d 527, 537 (3d. Cir. 1999); *In re Randall's Island Family Golf Ctrs., Inc., 261* B.R. 96 (Bankr. S.D.N.Y. 2001) *aff'd,* 272 B.R. 521, (S.D.N.Y. 2002); *In re Integrated Res., Inc.,* 147 B.R. at 650-56.

### NOTICE

27.     Notice of this Motion has been provided to: (i) counsel to McCormick; (ii) counsel to UFI; (iii) the Notice Parties identified in the Residual Asset Procedures; and, (iv) all parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002.  The Liquidating Trustee submits that, in light of the relief requested, no other or further notice need be provided.

143903.01600/40212627v.1

## CONCLUSION

WHEREFORE, the Liquidating Trustee respectfully requests that this Court enter the Bidding Procedures Order approving the Bidding Procedures and grant such further relief as is just and equitable.

Dated:    October 17, 2014

**BLANK ROME LLP**

___ */s/ Victoria Guilfoyle*
Michael B. Schaedle
Victoria A. Guilfoyle (No. 5183)
1201 Market Street, Suite 800
Wilmington, Delaware 19801

-and-

**HAHN & HESSEN LLP**
Mark T. Power
Mark S. Indelicato
Janine M. Figueiredo
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Co-Counsel to Alan D. Halperin, Liquidating Trustee of the FBI Wind Down, Inc. Liquidating Trust*

143903.01600/40212627v.1