| | |
|---|---|
| In re: | : Chapter 11 |
| | |
| FBI WIND DOWN, INC. (f/k/a Furniture | : Case No. 13-12329 (CSS) |
| Brands International, Inc.), *et al.*, | : (Jointly Administered) |
| | |
| Debtors.[1] | : **Hearing Date: December 16, 2020 at 10:45 a.m. (ET)** |
| | : **Objection Deadline: November 18, 2020 at 4:00 p.m. (ET)** |

## LIQUIDATING TRUSTEE'S OBJECTION TO THE ADMINISTRATIVE EXPENSE CLAIMS ASSERTED BY HERITAGE HOME GROUP LLC (NO LIABILITY CLAIMS AND REDUNDANT CLAIMS)

Alan D. Halperin, in his capacity as the Liquidating Trustee (the "<u>Liquidating Trustee</u>") of

the FBI Wind Down, Inc. Liquidating Trust (the "<u>Liquidating Trust</u>"), by his undersigned counsel,

files this objection (the "<u>Objection</u>") to the administrative expense claims filed by Heritage Home

Group, LLC f/k/a FBN Acquisition Holdings, LLC ("<u>HHG</u>") that are listed on <u>Exhibit A</u> and

<u>Exhibit B</u> to the attached proposed order (collectively, the "<u>Disputed Claims</u>").  In support of the

Objection, the Liquidating Trustee respectfully states as follows:

### JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are section 502

of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of

---

[1]       The debtors in these chapter 11 cases (collectively, the "<u>Debtors</u>"), along with the last four digits of each Debtor's tax identification number, as applicable, are:  FBI Wind Down, Inc. (7683); AT Wind Down, Inc. (7587); BFI Wind Down, Inc. (3217); BHF Wind Down, Inc. (8844); BR Wind Down, Inc. (8843); BT Wind Down, Inc. (1721); FBH Wind Down, Inc. (2837); FBO Wind Down, Inc. (4908); FBRC Wind Down, Inc. (1288); HFI Wind Down, Inc. (7484); HR Wind Down, Inc. (6125); HT Wind Down, Inc. (4378); LFI Wind Down, Inc. (5064); LHFR Wind Down, Inc. (9085); LV Wind Down, Inc. (8434); MSFI Wind Down, Inc. (7486); TFI Wind Down, Inc. (6574); THF Wind Down, Inc. (3139); and TR Wind Down, Inc. (6174).

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2.     The Liquidating Trustee confirms his consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## PRELIMINARY STATEMENT

3.     This Objection is the culmination of years of discussions, negotiations, and litigation that had its very genesis at the closing of the sale of substantially all of the Debtors' assets to HHG pursuant to Section 363 of the Bankruptcy Code.  Almost from the closing date, HHG had buyer remorse regarding the amount of consideration it agreed to pay to the estates for substantially all the Debtors' assets pursuant to a sale approved by this Court.  In an effort to remedy a perceived (but not actual) loss, in conjunction with the closing and immediately thereafter, HHG implemented a series of "adjustments" and "novel interpretations" of the Asset Purchase Agreement to secrete away and otherwise deprive the Debtors' estate of its rightful assets.

4.     HHG achieved this sleight of hand by, among other things,

(a)     improperly omitting from the Cash Amount, almost $5 million in sales that occurred at the Debtors' store on the Saturday and Sunday **prior to** the Monday morning closing of the sale transaction, even though such cash clearly was an Excluded Asset under the terms of the Asset Purchase Agreement; and

(b)     artificially inflating the amount of accounts payable by over $12.5 million (since the Debtors' estate was responsible for amounts over $9 million) ignoring the way the Debtors had traditionally accounted for vendor credits and associated payables and implementing a new methodology that clearly benefitted HHG at the expense of the estate and its creditors.

5.     This $17.5 million swing in value away from the Debtors' estate forms the basis of both the Disputed Claims at issue in these cases and the Liquidating Trust's claims against the HHG Debtors.   While the Liquidating Trustee acknowledges that as a result of the HHG bankruptcy, there is little it can do to recoup the amounts wrongfully taken from the Debtors' estate, it would be a complete miscarriage of justice to further compound HHG's egregious conduct by permitting HHG any recovery from this estate on account of Disputed Claims that have no basis in fact or law.   As set forth in greater detail below, the Disputed Claims should be disallowed and expunged in their entirety.

## GENERAL BACKGROUND

6.     On September 9, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

7.     On July 14, 2014, the Court entered an order (the "Confirmation Order") (i) confirming the Debtors' Second Amended Joint Plan of Liquidation of FBI Wind Down, Inc. and Its Subsidiaries under Chapter 11 of the Bankruptcy Code [Docket No. 1840] (as amended, the "Plan"), (ii) establishing the Liquidating Trust, and (iii) appointing the Liquidating Trustee to wind down the Debtors' estates.

8.     The Plan became effective on August 1, 2014 (the "Effective Date").

9.     Pursuant to the Plan, the Liquidating Trustee is authorized and empowered to, among other things, (a) determine which claims should be allowed, (b) file, withdraw, or litigate to judgment objections to claims or equity interests, (c) settle or compromise any disputed claim, (d) amend the Debtors' schedules in accordance with the Bankruptcy Code, and (e) administer and adjust the claims register to reflect any such settlements or compromises.

## BACKGROUND RELATED TO THE SALE

10. On the Petition Date, the Debtors filed a motion (the "Sale Motion") seeking (a) authorization and approval to sell substantially all their assets to affiliates of Oaktree Capital Management, L.P. ("Oaktree") and (b) approval to enter into an Asset Purchase Agreement between the Debtors and Oaktree (the "Oaktree APA"). The Oaktree APA provided, *inter alia*, that Oaktree would purchase substantially all the assets of the Debtors for $166 million (the "Original Oaktree Proposal").[2]

11. Concurrently with the Sale Motion, the Debtors filed a motion (the "DIP Financing Motion") seeking entry of interim and final orders authorizing the Debtors to obtain senior secured postpetition financing on a super-priority basis in an amount up to $140 million from Oaktree pursuant to a Senior Secured Super-Priority Debtor in Possession Credit Agreement dated September 9, 2013.

12. On September 11, 2013 (the "First Day Hearing"), the Court conducted a hearing on various first day pleadings, including the DIP Financing Motion. KPS Capital Partners, L.P. (together with its various affiliates who entered into the asset purchase agreement (the "APA") to purchase all the assets of the Debtors, "KPS") appeared at the First Day Hearing and submitted an alternative proposal to (a) provide the Debtors with postpetition financing and (b) be considered the stalking horse bidder to purchase substantially all of the Debtors' assets (including assets of the Lane Debtors) for a purchase price of $225 million. As a result of the alternative transaction proposed by KPS, Oaktree improved the terms of the Original Oaktree Proposal. At the conclusion

---

[2] The Original Oaktree Proposal did not anticipate Oaktree's purchase of any assets of Debtors LFI Wind Down, Inc. (f/k/a Lane Furniture Industries, Inc.), LHFR Wind Down, Inc. (f/k/a Lane Home Furnishings Retail, Inc.), or LV Wind Down, Inc. (f/k/a Laneventure, Inc.) (collectively, the "Lane Debtors").

of the First Day Hearing, the Court, *inter alia*, entered an interim order approving the DIP Financing Motion with Oaktree as DIP lender.

13.     Thereafter, the Debtors and the Official Committee of Unsecured Creditors appointed in the Debtors' bankruptcy proceedings (the "Committee") negotiated with both Oaktree and KPS to obtain the highest and best offer for the Debtors' assets.  As a result of these negotiations, KPS, on its behalf and behalf of its affiliate which later became HHG, made a proposal to purchase substantially all the Debtors' assets for a total purchase price of $280 million, plus other consideration, and for KPS to provide DIP financing in an amount up to approximately $190 million.

14.     On October 2, 2013, the Debtors and HHG (together with certain other parties) entered into the APA pursuant to which the Debtors agreed to sell substantially all of their assets to HHG for approximately $280 million, plus HHG's assumption of certain liabilities.

15.     On October 3, 2013, the Court held a hearing on, *inter alia*, the DIP Financing Motion and the Sale Motion.  At the conclusion of that hearing, the Court approved the DIP Credit Agreement with the KPS affiliated entities on an interim basis and selected HHG to serve as the stalking horse bidder for substantially all the Debtors' assets.

16.     The parties thereafter executed an Amendment No. 1 to the APA as of November 5, 2013, to clarify certain terms ("Amendment No. 1").

17.     The parties then executed Amendment No. 2 to the APA as of November 2013, to clarify certain additional terms ("Amendment No. 2").

18.     The Court entered on November 22, 2013 the Sale Order that, *inter alia*, approved the Sale of the Debtors' assets in accordance with the terms of the APA.

19.     The Sale closed as of 12:01 a.m. EST on Monday, November 25, 2013 (the "Closing Date").

## BACKGROUND RELATED TO THE PURCHASE PRICE DISPUTE

20.     On or about January 24, 2014, based on HHG's distorted interpretation of Amendment No. 2, HHG forwarded to the Debtors a letter outlining certain reconciliations (the "HHG Reconciliation") regarding Checks in Transit, Cash Amounts in Transits, the Closing Cash and the Actual AP as of the Closing Date.  Based on this tortured interpretation of the APA and Amendment No. 2, HHG claimed in the HHG Reconciliation that the Debtors owed HHG in excess of $7.3 million, as more particularly set forth therein.  This fanciful account of the transactions forms the basis of the Disputed Claims.

21.     The Debtors responded to the HHG Reconciliation by letter dated March 11, 2014 with a detailed account setting forth why the HHG Reconciliation was not only inaccurate but that HHG, in fact, owed the Debtors' estate in excess of $10 million (the "Debtors' Reconciliation"). The Debtors' Reconciliation set forth that, among other things, HHG (a) improperly excluded cash held in three bank accounts on the day prior to the Closing Date in its calculation of Closing Cash, (b) inflated the amount by which accounts payable exceeded the $9 million cap provided for in the APA (i.e., the amount of the accounts payable that the Debtors' estate was responsible to pay) by more than $12.5 million by ignoring the manner in which the Debtors had accounted for these payables for years and (c)  improperly omitted almost $5 million of Cash Amounts in Transit that was clearly an Excluded Assets.

22.     HHG disputed the Debtors' Reconciliation in a letter dated March 21, 2014 and thereafter filed a series of administrative proofs of claim, which collectively are referred to herein as the Disputed Claims:

a.   On April 24, 2014, HHG filed an unliquidated administrative expense claim ("Administrative Claim") against the Debtors asserting claims arising under the APA as well as the Transition Services Agreement executed on the Closing Date ("TSA").

b.   On July 11, 2014, HHG filed the Amended Request for Payment of Administrative Expense Claims ("Amended Request") and asserted that it was owed not less than $7.9 million under the APA and not less than $3.3 million under the TSA.

c.   And on July 21, 2014, HHG filed its Second Amended Request for Payment of Administrative Expense Claims ("Second Request"), asserting similar claims under the APA and the TSA as those set forth in the Amended Request but also to assert claims under the Partnership Interest Assignment Agreement dated as of November 25, 2013.

23.   In addition, HHG provided informal comments in connection with confirmation of the Plan, which were resolved by the establishment of a disputed claim reserve in the Confirmation Order for whatever administrative expense claim of HHG, if any, was ultimately allowed by this Court.

24.   Following confirmation of the Plan, the Debtors, and thereafter the Liquidating Trustee, continued their efforts to negotiate a consensual resolution with HHG for many months, but to no avail.  Ultimately, on November 20, 2015, the Liquidating Trustee commenced an adversary proceeding against HHG and various related parties entitled *FBI Wind Down Liquidating Trust by and through Alan Halperin as Liquidating Trustee v Heritage Home Group LLC f/k/a FBN Acquisition Holdings LLC (and related entities)* Adv. Proc. No. 15-51899 (CSS) (the "Complaint").  The Complaint sets forth in extensive detail not only the claims the Liquidating Trustee has against HHG, but more importantly, for purposes of this Objection, why the Disputed Claims of HHG lack any merit and should be disallowed and expunged.[3]  A copy of the Complaint

---

[3]  The Liquidating Trust acknowledges that the Adversary Proceeding is stayed by the HHG Bankruptcy Proceeding and does not seek any recovery against HHG in this Objection but only seeks to set forth the basis for the objection to the Administrative Claim, the Amended Administrative Claim and the Second Amended Administrative Claim as set forth therein.

is annexed hereto as <u>Exhibit 2</u>[4]. The Liquidating Trustee recognizes the Court is familiar with the contents of the Complaint. Rather than repeat the extensive allegations set forth in the Complaint, the Liquidating Trustee respectfully incorporates herein by reference the relevant sections of the Complaint and the exhibits thereto, which include, among other things, the APA, the Sale Order, the HHG Reconciliation, and the Debtors' Reconciliation.[5]

25.     Neither HHG nor any of the other defendants has ever answered or substantively responded to the Complaint. *See generally* docket of Adv. Proc. No. 15-51899 (CSS). Instead, desperate to keep this dispute away from the Bankruptcy Court, HHG and its co-defendants pursued an ultimately unsuccessful argument that the Complaint was subject to binding arbitration. That argument was rejected by this Court, by the District Court, and ultimately by the Third Circuit. The adversary proceeding has been remanded to this Court. After fighting off HHG's procedural machinations through two appeals over the course of 30 months, HHG filed for Chapter 11 before the Liquidating Trustee could begin the process of addressing the recovery of funds taken from FBI's estate and its creditors and the issue has remained in limbo. At this point, the Liquidating Trustee has settled his claims against all of the defendants except for HHG in the adversary proceeding. *See Order Approving Stipulation of Dismissal of All Claims Against KPS*, D.I. 80, Adv. Proc. No. 15-51899, (May 27, 2020).

26.     The adversary proceeding remains stayed as against HHG, which is a debtor in its own chapter 7 case pending before Judge Shannon of this Court. *See* Case No. 18-11736 (BLS).

---

[4]     Because of the size of the Complaint and exhibits, the Liquidating Trust simply attaches the Complaint to this Objection. The exhibits to the Complaint can be provided upon request or by referencing the docket at Adv. Pro. No. 15-51899.

[5]     For the avoidance of any doubt, by this Objection the Liquidating Trustee is **not** seeking any determination as to the estates' claims against HHG. The Liquidating Trustee is merely defending against HHG's asserted unliquidated and unsupported administrative expense claims filed in these cases.

27.     The Liquidating Trustee, and the Debtors and Committee before him, have for more than six and a half years attempted to informally and formally resolve HHG's purported claims against the estate. At this juncture, the Liquidating Trustee and the creditors of FBI Wind Down, Inc. and its affiliated Debtors need a resolution of the Disputed Claims so the Liquidating Trust can be fully administered and these cases can be brought to a conclusion.

## RELIEF REQUESTED

28.     By this Objection, the Liquidating Trustee seeks entry of an order, substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order"), pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (i) disallowing and expunging each Disputed Claim listed on Exhibit A to the Proposed Order as a no liability claim and (ii) disallowing and expunging each Disputed Claim listed on Exhibit B to the Proposed Order as a redundant claim.

## OBJECTIONS TO CLAIMS

### A.     No Liability Claims

29.     Section 503(b) of the Bankruptcy Code, which governs administrative expense claims, provides in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses including the actual necessary cost and expenses of preserving the estate including ... services rendered after the commencement of the case.

11 U.S.C. 503(b).

30.     When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *In re Allegheny Int'l, Inc.* 954 F.2d 167, 173 (3d Cir. 1992). Indeed the claimant bears a heavy burden of establishing that its claim qualifies for administrative expense status by setting forth all of the elements of those claims by a preponderance of the evidence. *See e.g.*, *Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1134 (10th Cir. 1973); *In re Goody's*

*Family Clothing Inc.*, 401 B.R. 131, 136 n.24 (Bankr. D. Del. 2009) ("An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status."). In addition, the claimant must also establish that these costs "were necessary to preserve the value of the estate assets". *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999); see, also, *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (same); *In re Subscription Tel. of Greater Atlanta*, 789 F.2d 1530, 1532 (11th Cir. 1986) ("There must be an actual concrete benefit to the estate before a claim is allowable as an administrative claim"). Here, HHG has utterly failed to meet its burden to prove it is entitled to any recovery from the Debtors' estate, let alone a priority recovery ahead of other creditors.

31.     In the Second Request, HHG sets forth bold assertions regarding potential claims against FBI arising under the APA without any specificity or factual support. Even assuming that the Second Request alleges sufficient facts to support a *prima* facie claim, which it does not, the Liquidating Trust in its Complaint produced more than sufficient evidence to negate whatever prima facie claim was established by HHG. *See In re Allegheny Int'l Inc.*, 954 F.2d at 175. Therefore, the burden, if it ever shifted, shifts back to HHG to prove the validity of the Second Request by a preponderance of the evidence. As noted above, HHG has never responded substantively to the Complaint and HHG is now in a chapter 7 liquidation. The Liquidating Trustee submits HHG has not, and cannot at this juncture, prove the validity of the Second Request by a preponderance of the evidence.

32.     The Debtors' chapter 11 cases and the Liquidating Trust are reaching their natural conclusions. Substantially all claims, except for the Disputed Claims, have been resolved. All litigation, except for the purchase price dispute as against HHG, have been or are in the final stages of being resolved. The Liquidating Trustee has paid all allowed secured, administrative, and

priority claims and has made four interim distributions to holders of allowed general unsecured claims. The resolution of HHG's Disputed Claims is one of the last remaining open issues in these cases. HHG has been given more than sufficient time to substantiate its Second Request and it has failed, or is unable, to do so. The Liquidating Trustee and his professionals, after a thorough and diligent analysis, believe the Debtors' estates have no liability to HHG. Accordingly, the Liquidating Trustee respectfully requests that the Second Request [claim no. 4647] be disallowed and expunged in its entirety.

33.     For these same reasons, to the extent claim nos. 4366 and 4642 are not disallowed and expunged as redundant claims for the reasons set forth below, claim nos. 4366 and 4642 should be disallowed and expunged as no liability claims, and the Liquidating Trustee requests such relief in the alternative.

## B.     Redundant Claims

34.     The Liquidating Trustee also objects to the Administrative Claim and the Amended Request [claim nos. 4366 and 4642, respectively] (together, the "Redundant Claims") as claims that are redundant to the Second Request, claim no. 4647. It appears that HHG filed multiple administrative proofs of claim on account of the same claim for which, as discussed above, the Debtors' estates are not liable. If the Redundant Claims are not disallowed and expunged, the potential exists for multiple recoveries for the claimant, which would prejudice other creditors in these cases. Accordingly, the Liquidating Trustee seeks to disallow and expunge the two Redundant Claims listed on Exhibit B to the Proposed Order.[6]

---

[6]     To the extent either Redundant Claim contains documentation that was not included with the surviving claim, the Liquidating Trustee does not object to the claimant relying on any such documentation to argue its case in support of the surviving claim, subject to the Liquidating Trustee's no-liability objection as set forth above.

35.	In support of this Objection, the Liquidating Trustee submits the Declaration of Meredith M. Graham, which is annexed hereto as <u>Exhibit 3</u>.

<u>**RESPONSES TO THIS OBJECTION**</u>

36.	To oppose the relief requested in this Objection, a claimant must file and serve a written response so that it is actually received no later than **November 18, 2020, at 4:00 p.m. (Prevailing Eastern Time)** (the "<u>Response Deadline</u>").

37.	Responses must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor Wilmington, Delaware 19801, and served in accordance with the Local Rules upon the following by no later than the Response Deadline:

Bielli & Klauder, LLC<br>
Attn: David M. Klauder<br>
1204 N. King Street<br>
Wilmington, Delaware 19801<br>
dklauder@bk-legal.com<br>
<br>
-and-<br>
<br>
Hahn & Hessen LLP<br>
Attn: Mark S. Indelicato<br>
488 Madison Avenue<br>
New York, New York 10022<br>
mindelicato@hahnhessen.com

38.	Responses to the Objection must, at a minimum, contain the following information:

a.	a caption setting forth the name of the Court, the name of the Debtors, the lead case number, and the title of the Objection to which the Response is directed;

b.	the name of the claimant, the Disputed Claim number, and a description of the basis for the amount of the Disputed Claim;

c.	the specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d.      all documentation and other evidence in support of the Disputed Claim, not previously filed with the Court or the Claims Agent, upon which the claimant will rely in opposing this Objection; and

e.      the name, address, telephone number, fax number and/or email address of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Liquidating Trustee should communicate with respect to the Disputed Claim or the Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the claimant.

39.      If a claimant fails to timely file and serve a response by the Response Deadline, the Liquidating Trustee may present to the Court an appropriate order disallowing the Disputed Claims without further notice to the claimant or a hearing.

40.      The Liquidating Trustee may, at his option, file and serve a reply to any response no later than three (3) days prior to the hearing date.  The Liquidating Trustee reserves the right to seek an adjournment of the hearing on any response to this Objection, which adjournment will be noted on the notice of agenda for the hearing.

41.      Questions or requests for further information regarding this Objection should be directed in writing to the Liquidating Trustee's counsel, Mark S. Indelicato, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Tel: (212) 478-7200, Fax: (212) 478-7400, Email: mindelicato@hahnhessen.com.  **Claimant should <u>not</u> contact the Clerk of the Court to discuss the merits of the Disputed Claims or this Objection.**

## <u>RESERVATION OF RIGHTS</u>

42.      The Liquidating Trustee expressly reserves the right to amend, modify or supplement this Objection, and to file additional objections to any other claims (filed or not) that may be asserted against the estates or the FBI Wind Down, Inc. Liquidating Trust.  Should one or more of the grounds of objection stated in this Objection be overruled, the Liquidating Trustee

reserves the right to object to the Disputed Claims on any other ground that bankruptcy and non-bankruptcy law permits.

## NOTICE

43.     Notice of the Objection has been provided to the following parties or their respective counsel of record: (a) Heritage Home Group, LLC; (b) Alfred T. Giuliano, Chapter 7 Trustee of the estate of Heritage Home Group, LLC; (c) the Office of the United States Trustee; and (d) parties entitled to receive notice in these cases under Local Bankruptcy Rule 9036-1 and the *Standing Order Regarding Service Pursuant to Del. Bankr. L.R. 5004-4 and 9036-1*. The Liquidating Trustee submits, in light of the nature of the relief requested, no further notice is necessary or required.

44.     No prior request for the relief requested in this Objection has been made to this Court or to any other court.

45.     The Liquidating Trustee submits this Objection does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above, and, accordingly, submits that no separate memorandum of law is necessary.

## CONCLUSION

WHEREFORE, the Liquidating Trustee respectfully requests entry of an order, substantially in the form annexed hereto as <u>Exhibit 1</u>, disallowing and expunging each Disputed

Claim listed on <u>Exhibit A</u> and <u>Exhibit B</u> to the attached Proposed Order, and granting the Liquidating Trustee such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
       October 26, 2020

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, Delaware 19801
(302) 803-4600
dklauder@bk-legal.com

-and-

**HAHN & HESSEN LLP**
Mark S. Indelicato (admitted *pro hac vice*)
Janine M. Figueiredo (admitted *pro hac vice*)
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Co-Counsel to the Liquidating Trustee of the*
*FBI Wind Down, Inc. Liquidating Trust*